202 P.3d 528

**STATE of Arizona, Appellee,**

v.

**Juaquin Romaldo ZAMORA, Appellant.**

**No. 1 CA–CR 06–0894.**

Court of Appeals of Arizona, Division 1, Department E.

Jan. 20, 2009.

Terry Goddard, Arizona Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals Section and William S. Simon, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Cory Engle, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

KESSLER, Judge.

¶ 1 Juaquin Zamora ("Zamora") appeals his conviction and sentence for first degree criminal trespass. The only issue on appeal is whether the superior court erred in denying Zamora's motion to suppress evidence. In ruling on a motion to suppress evidence when police conduct a two-stage custodial interrogation, a court must determine whether inadmissible statements made to the police prior to *Miranda*[1] warnings taint statements made after those warnings or the use of a two-stage custodial interrogation was intended to avoid the purpose of those warnings. *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004); *Oregon v. Elstad*, 470 U.S. 298, 105

---

**1.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.   1602, 16 L.Ed.2d 694 (1966).

S.Ct. 1285, 84 L.Ed.2d 222 (1985).[2] The record in this case is insufficient for us to determine whether Zamora made statements to police in response to questioning while he was in custody and prior to his receiving *Miranda* warnings and, if so, whether this was a two-stage interrogation subject to *Seibert* or *Elstad.* Accordingly, we remand this matter for the superior court to clarify the record and supplement its findings and determine whether any or all statements made by Zamora should have been suppressed.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 City of Glendale Police Officers A and H responded to a call that someone was trespassing in a vacant apartment in an apartment complex. When the officers arrived at the vacant apartment, they suspected that someone had broken in because the door frame was damaged. They knocked and announced themselves as police officers and a young girl opened the door to let them in. The officers saw three girls and Zamora inside the apartment. Zamora was alone sitting on the floor in one of the rooms. The two officers split up: Officer H talked to the girls and Officer A talked to Zamora.

¶ 3 For approximately five to fifteen minutes, Officer A asked Zamora general questions to determine whether he had a lawful reason for being in the apartment. Zamora told Officer A that he went to the apartment because he wanted to warn the girls that the police were coming. Zamora also said that he thought that the apartment was a clubhouse, but stayed even after learning it was not. Officer A then asked why he stayed in the apartment if he knew it was not a clubhouse. Zamora replied that he stayed because he was eating, that he had only been there for two or three minutes, and that he

wanted to leave. At some point, Zamora stood up and asked to leave, but Officer A told him to sit down. Officer A had to tell Zamora twice to sit down before he complied. Officer A concluded that Zamora was unlawfully in the apartment and placed him under arrest. It is undisputed that up to that point the police had not read Zamora his *Miranda* rights.

¶ 4 Immediately after making the arrest, Officer A handed Zamora over to Officer H and both officers escorted Zamora to a patrol car. With Zamora secured in the back seat, Officer A left to speak with the property manager and Officer H read Zamora his *Miranda* rights. When Officer A returned to the car, Officer H told Officer A that he read Zamora his rights, and Zamora affirmed to Officer A that he understood them. Then Officer A asked Zamora to tell him again "what happened today." Zamora said that he had already told Officer H what happened.[3] In response, Officer A told Zamora that since he had been advised of his *Miranda* rights, he needed to re-tell the story. However, it is unclear what Zamora then said to the officers.

¶ 5 Zamora was indicted for criminal trespass in the first degree pursuant to Arizona Revised Statutes ("A.R.S.") section 13–1504(A)(1) (Supp.2008).[4] Zamora moved to suppress the statements he made to the police officers at the scene, arguing the statements were coerced, but neither party cited or argued *Elstad* or *Seibert.* The superior court denied that motion in its entirety. Because it is important for our analysis, we quote from the superior court's explanation and ruling verbatim:

> Counsel, based upon the totality of the circumstances of the evidence the Court heard, the Court finds that the defendant was not free to leave from the apartment,

**2.** A "two-stage" custodial interrogation occurs as follows. In the first stage, police interrogate a person in custody without having given the person his *Miranda* warnings and the person has made statements in response to that questioning. Then, in the second stage, the police give the person his *Miranda* warnings, the person waives his right to remain silent and the person repeats his prior statements in response to the police repeating the questions or lines of questions

asked prior to the *Miranda* warnings being given. *Seibert*, 542 U.S. at 604, 124 S.Ct. 2601.

**3.** Officer H denied that he asked Zamora any questions when Officer A stepped away to talk with the property manager.

**4.** We cite to the current versions of the applicable statutes because no material changes relevant to this case have occurred.

based on whoever [sic] that was part of investigative detention. Based upon the totality of the circumstances, the Court does find that Miranda applied in the totality at that time. The defendant may not have been free to leave until the officer finished asking him some questions. He was not formally under arrest, and the other indicia or liability [sic] that we look for was not present.

Therefore, I am going to allow the State to use those pre-Miranda Warnings as post Miranda warnings based upon what the officer testified to. The Court does not find that the way the officer phrased the questions is necessarily in and of itself coercive. That if it was, the defendant acknowledged to understanding those rights, and in essence agreed to go forward with the questioning. Therefore, I will allow the State to use those post Miranda statements at [sic] well.

¶ 6 Zamora was convicted of first degree criminal trespass. He received a suspended sentence and three years probation beginning from his discharge from prison for time served under another crime. Zamora timely appealed pursuant to Arizona Rule of Criminal Procedure 31.3. This court has jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1) (2003), 12–2101(B), 13–4031 (2001), and 13–4033(A)(1),(3) (2001).

## ANALYSIS

### I. Standard of Review

¶ 7 When reviewing an appeal from a denial of a motion to suppress, we will not reverse except for an abuse of discretion. *State v. Cruz,* 218 Ariz. 149, 161, ¶ 47, 181 P.3d 196, 208 (2008). We defer to the superior court's factual determinations; however, to the extent its ultimate ruling is a conclusion of law, we review de novo. *State v. Box,* 205 Ariz. 492, 495, ¶ 7, 73 P.3d 623, 626 (App.2003); *State v. Wyman,* 197 Ariz. 10, 13, ¶ 7, 3 P.3d 392, 395 (App.2000) (question of whether person has been seized is a mixed question of law and fact). A court may commit an abuse of discretion if it errs in applying the legal test to its findings. *Grant v. Arizona Pub. Serv. Co.,* 133 Ariz. 434, 456, 652 P.2d 507, 529 (1982). We will review "only the evidence presented at the suppression hearing and view it in the light most favorable to upholding the trial court's factual findings."[5] *State v. Fornof,* 218 Ariz. 74, 76, ¶ 8, 179 P.3d 954, 956 (App.2008) (citing *In re Ilono H.,* 210 Ariz. 473, ¶ 2, 113 P.3d 696, 697 (App.2005)). We will infer the necessary findings to affirm the superior court, *State v. Ossana,* 199 Ariz. 459, 461, ¶ 8, 18 P.3d 1258, 1260 (App.2001), although we will do so only if the implied findings do not conflict with the court's express findings. *Coronado Co., Inc. v. Jacome's Dep't Store, Inc.,* 129 Ariz. 137, 139, 629 P.2d 553, 555 (App.1981).

### II. Admissibility of the Statements

¶ 8 Zamora claims that the superior court erred in denying his motion to suppress the statements he made before and after the police read him his *Miranda* rights. We find the superior court record unclear regarding when Zamora was in custody for *Miranda* purposes and if any of the statements admitted at trial were made while he was in custody, but before he had been given his *Miranda* warnings. We also cannot determine whether the court applied the proper standard for the admissibility of evidence when two-stage interrogation techniques are employed. Accordingly, we remand for clarification and, if necessary, a new trial.

¶ 9 Police are free to ask questions of a person who is not in custody without having to give the person any warnings under *Miranda.* *Florida v. Bostick,* 501 U.S. 429, 434–35, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *State v. Pettit,* 194 Ariz. 192, 195, ¶ 15, 979 P.2d 5, 8 (App.1998).

¶ 10 Once the person is in custody, however, *Miranda* requires that if the State wants to admit statements the person may make in response to questioning, the police must first inform him of certain constitutional rights. *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602. Specifically, "[p]rior to any questioning, the person must be warned that he has a

5. We use the terms "suppression hearing" and "voluntariness hearing" interchangeably.

right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* If the police fail to inform a suspect of his rights before engaging in "custodial interrogation," statements made by the suspect are excluded from evidence at trial unless they are spontaneous. *See State v. Smith,* 193 Ariz. 452, 459–60, ¶ 32, 974 P.2d 431, 438–39 (1999) (spontaneous statements admissible); *United States v. Chipps,* 410 F.3d 438, 445 (8th Cir.2005) (same). "Custodial interrogation" is "[q]uestioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602. Whether a person is in custody is an objective test based on whether "a reasonable man feel[s] that he was deprived of his freedom of action in any significant way." *State v. Hatton,* 116 Ariz. 142, 146, 568 P.2d 1040, 1044 (1977). "The test is whether, in light of all the circumstances, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " *Wyman,* 197 Ariz. at 13, ¶ 7, 3 P.3d at 395 (quoting *Michigan v. Chesternut,* 486 U.S. 567, 569, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)). Courts look to the factual circumstances surrounding the incident to answer that question. *Stansbury v. California,* 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); *State v. Cruz–Mata,* 138 Ariz. 370, 373, 674 P.2d 1368, 1371 (1983).

### A. Pre–Miranda Statements

¶ 11 As to the admission of Zamora's pre-*Miranda* statements, we must remand to the superior court because we cannot determine from the record whether the court applied the correct test for admission of statements made in response to custodial interrogation prior to Zamora being *Mirandized.* Based on the testimony at the sup-

pression hearing and the court's findings quoted above, we cannot determine whether the court denied the motion to suppress because it concluded the pre-*Miranda* statements were not made while Zamora was in custody or because the court thought they were made while Zamora was in custody, but did not think the statements were coerced. The correct approach is to first determine if the person was in custody; if he was in custody, he was not *Mirandized* and the statements were not spontaneous, they are inadmissible during the State's case-in-chief regardless whether they were coerced by other means. *See Miranda,* 384 U.S. at 444, 86 S.Ct. 1602; *Smith,* 193 Ariz. at 459–60, ¶ 32, 974 P.2d at 438–39.[6] The ultimate test to determine if a suspect is in custody is whether the person's freedom of movement is restricted to the extent that it would be tantamount to formal arrest or at least that a reasonable person would believe he was in police custody of the degree associated with formal arrest. *Compare State v. Spreitz,* 190 Ariz. 129, 143, 945 P.2d 1260, 1274 (1997) (citing *Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) establishing that test is objective based on whether person would believe freedom of movement is restricted tantamount to formal arrest) with LaFave, § 6.6(c) at 726–29 (explaining the difficulties in using a subjective test for custody). *See also Cruz–Mata,* 138 Ariz. at 372–73, 674 P.2d at 1370–71 (court should determine based on objective factors whether there was a formal arrest or a restraint on the freedom of movement of the degree associated with a formal arrest). When the totality of factors, including any possible coercion, satisfies the test for custody, then the *Miranda* requirement is triggered. *See generally State v. Stanley,* 167 Ariz. 519, 523, 809 P.2d 944, 948 (1991).

¶ 12 It is unclear if Zamora made the pre-*Miranda* statements when he was in custody. Officer A acknowledged Zamora was not free to leave when he told him to sit down. In

---

6. If statements were made after a suspect was *Mirandized,* the court then must determine if the statements were coerced by other conduct. *State v. James,* 141 Ariz. 141, 144, 685 P.2d 1293, 1296 (1984) (if *Miranda* warnings are administered, the next requirement for admissibility of state-

ments is voluntariness). *See also* 2 Wayne R. LaFave et al., *Criminal Procedure,* § 6.2(c) at 636–37 (3d ed. 2007) ("LaFave") (noting that failure to give *Miranda* warning is one factor in determining whether statements were involuntary under totality of circumstances test).

many if not all cases, a reasonable person at that point would not feel free to leave and would be in custody. *Compare State v. Rogers*, 186 Ariz. 508, 510–11, 924 P.2d 1027, 1029–30 (1996) (a person is in custody when police officers, suspecting criminal activity, approach a suspect and say, "police officers, we need to talk to you.") with *State v. Wynn*, 114 Ariz. 561, 564, 562 P.2d 734, 737 (App. 1977) (a person is not in custody when police officers lawfully stop vehicle, suspecting burglary, and merely ask investigatory questions). *See also Cruz–Mata*, 138 Ariz. at 372–73, 674 P.2d at 1370–71 (defendant not in custody when asked questions in police station after voluntarily going to station and not having been arrested or physically restrained). We cannot tell from the record if Zamora made his statements while he was in custody.

¶ 13 We remand to the superior court for clarification of when custody occurred and whether any statements were made while Zamora was in custody prior to his being *Mirandized*. Responses to questions after Zamora was in custody, made before he had been *Mirandized*, would be inadmissible.

### B. Post–Miranda Statements

¶ 14 In addition, Zamora claims that because his post-*Miranda* statements were products of the non-*Mirandized* statements, they were tainted and the superior court should have suppressed them. Citing *Seibert*, Zamora argues that his answering general questions about why he was at the apartment before he was *Mirandized* made the *Miranda* warnings ineffective. We cannot determine whether to affirm or reverse the superior court, however, for two reasons. First, we find that the record lacks sufficient factual information surrounding the post-*Miranda* statements. Second, the superior court may have incorrectly applied *Seibert* and *Elstad*. Thus, we remand the case to the superior court for a determination whether Zamora's post-*Miranda* statements were voluntary and, if not, whether a new trial is needed.

¶ 15 To the extent Zamora made statements in response to custodial interrogation before being *Mirandized* and then repeated those statements in response to questions after being *Mirandized*, under current law one of two tests is used to determine whether the post-*Miranda* statements are admissible.[7] Under *Elstad*, an uncoerced pre-*Miranda* warning statement made in custodial interrogation does not disable a person from later waiving his rights and confessing after he has been given the requisite *Miranda* warnings. *Elstad*, 470 U.S. at 318, 105 S.Ct. 1285. If, however, there is evidence the pre-*Miranda* warning statements were coerced or involuntary, then the post-*Miranda* statements are admissible only if "the taint dissipated through the passing of time or a change in circumstances." *United States v. Williams*, 435 F.3d 1148, 1153 (9th Cir.2006) (quoting *Seibert*, 542 U.S. at 628, 124 S.Ct. 2601 (O'Connor J., dissenting)). The concern is that after a defendant makes involuntary inculpatory statements, then is *Mirandized* and is asked the same questions, his choice of how to proceed may not necessarily be voluntary, especially regarding the right to remain silent, because he had already spoken to the police.

¶ 16 In *Seibert*, however, the Supreme Court in a plurality decision held that courts should review two-step interrogation cases by first determining whether the police deliberately withheld the *Miranda* warnings. .

---

7. Prior to *Elstad* and *Seibert*, the Arizona Supreme Court adopted a "fruits of the poisonous tree" test for two-step interrogations. *State v. Hein*, 138 Ariz. 360, 364–65, 674 P.2d 1358, 1362–63 (1983) (post-*Miranda* statements excluded under fruit of poisonous tree doctrine when they were too closely related to the pre-*Miranda* questioning to conclude they were not the exploitation of the original improper questioning). On questions of federal constitutional law, we are bound by decisions of our supreme court absent a subsequent decision of the United States Supreme Court on the same subject. *Hernandez–Gomez v. Volkswagen of Am., Inc.*, 201 Ariz. 141, 143–44, ¶ 8, 32 P.3d 424, 426–27 (App.2001); *State v. Superior Court*, 2 Ariz.App. 458, 460, 409 P.2d 742, 744 (1966). Since *Elstad* and *Seibert* address issues of federal constitutional law and modify the test used by *Hein* in dealing with two-step interrogations, we must follow the United States Supreme Court on those tests.

*Seibert*, 542 U.S. at 622, 124 S.Ct. 2601.[8] To determine deliberateness, "courts should consider whether objective evidence and any available subjective evidence ... support an inference that the two-step interrogation procedure was used to undermine the *Miranda* warning." *Williams*, 435 F.3d at 1158.

¶ 17 If a court finds police acted deliberately to undermine *Miranda*, it must determine whether the *Miranda* warnings were effective—based on both objective and curative factors—to "apprise[ ] the suspect that he had a 'genuine choice whether to follow up on [his] earlier admission.'" *Williams*, 435 F.3d at 1160. Those factors include:

(1) the completeness and detail of the prewarning interrogation, (2) the overlapping content of the two rounds of interrogation, (3) the timing and circumstances of both interrogations, (4) the continuity of police personnel, (5) the extent to which the interrogator's questions treated the second round of interrogation as continuous with the first and (6) whether any curative measures were taken.

*Id.* at 1160. If the *Miranda* warnings are effective, then uncoerced post-*Miranda* statements are admissible. If, however, the *Miranda* warnings are not effective, then post-*Miranda* statements should be suppressed unless curative measures were employed. If curative measures "are absent or fail to apprise a *reasonable person* in the suspect's shoes of his rights, the trial court

should suppress the confession." *Id.* at 1158. As the *Seibert* Court explained:

postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made. Curative measures should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver.

*Seibert*, 542 U.S. at 622, 124 S.Ct. 2601. The Court gave two examples of curative measures: (1) a substantial break in time and circumstances between the pre-*Miranda* and post-*Miranda* statements or (2) an additional statement by the police informing the defendant that the pre-*Miranda* statements are likely inadmissible. *Id.*

¶ 18 In contrast, when no deliberateness to undermine *Miranda* is found, the court is to apply the *Elstad* standard: (1) Uncoerced post-*Miranda* warning statements are admissible if the Fifth Amendment waiver was valid, but (2) uncoerced post-*Miranda* statements are inadmissible if the pre-*Miranda* warning statements were otherwise coerced and the taint from such coercion has not dissipated through the passing of time or a change in circumstances. *Elstad*, 470 U.S. at 308, 313–14, 318, 105 S.Ct. 1285; *Williams*, 435 F.3d at 1157.

¶ 19 Here, the superior court concluded that both Zamora's pre-*Miranda* and post-

---

8. In a plurality decision, when "no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as the position taken by those Members who concurred in the judgments on the narrowest grounds." *Williams*, 435 F.3d at 1157 (quoting *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)); *State v. Stummer*, 219 Ariz. 137, 141 n. 3, 194 P.3d 1043, 1047 n. 3 (2008) (concurring opinion is considered the controlling opinion if it is "the narrowest opinion joining in the judgment of the Court.") (quoting *Center for Fair Pub. Policy v. Maricopa County*, 336 F.3d 1153, 1161 (9th Cir.2003)).

While courts are divided on this issue in applying *Seibert, see New Jersey v. O'Neill*, 193 N.J. 148, 936 A.2d 438, 453–54 nn. 14–16 (2007)(collecting cases showing conflicting decisions), we agree with *Williams* that Justice Kennedy's concurring opinion is controlling because it is the narrowest opinion concurring in the Court's

judgment. In *Seibert*, the plurality concluded that whenever a two-step interrogation occurs, admissibility of the post-*Miranda* statements should depend on whether the *Miranda* warnings were effective "to accomplish their object." *Seibert*, 542 U.S. at 622–23, 124 S.Ct. 2601 (Breyer, J., concurring). Justice Breyer, concurred with three of the other justices, concluding that his opinion of the three other justices could and should be read as providing that courts should exclude the post-*Miranda* statements in a two-stage interrogation as " 'fruits' of the initial unwarned questioning unless the failure to warn was in good faith." *Id.* at 617–18, 124 S.Ct. 2601 (Breyer, J., concurring). In contrast, Justice Kennedy, the fifth justice, concurred in the judgment, contending that the *Elstad* test would not apply if the two-stage interrogation was used deliberately to circumvent *Miranda*. *Id.* at 622, 124 S.Ct. 2601 (Kennedy, J., concurring).

*Miranda* statements were admissible without—so far as we can tell—determining initially whether the police officers acted deliberately to undermine *Miranda*. We cannot determine from the cold record whether there was a deliberate two-step interrogation or whether the superior court applied the *Elstad* standard, especially since the parties did not argue *Elstad* or *Seibert* below. It concluded that Officer A's questions were not coercive, but even if they were, Zamora acknowledged that he understood his rights. Assuming that *Elstad* is the correct standard to apply, non-coercive pre-*Miranda* questions and Zamora's understanding of his rights only make the post-*Miranda* statements admissible, but the pre-*Miranda* statements remain inadmissible if made while Zamora was in custodial interrogation.

¶ 20 As noted above, on this record we cannot reverse or affirm the trial court's ruling, however, for at least two reasons. First, the record does not reflect what Zamora told the police after he was *Mirandized.* Thus, when the police recounted his statements during the trial, we cannot tell if those statements were based on Zamora's pre-*Miranda* or post-*Miranda* answers. Second, since the court did not make any finding about deliberateness, but only found that there was no coercion as to the post-*Miranda* statements, we cannot tell whether the court considered the *Seibert* test at all. Even if *Seibert* did not apply, the court made no finding whether the pre-*Miranda* statements, assuming they had been made in response to custodial interrogation, were uncoerced or any coercion had dissipated.[9]

## CONCLUSION

¶ 21 Because the record lacks pertinent facts bearing on whether any or all the statements should have been suppressed, we remand the case to the superior court. *State v. Smith,* 208 Ariz. 20, 26, ¶ 21, 90 P.3d 221, 227 (App.2004). On remand, the superior court should: (1) Clarify when and if Zamora

was in custody prior to his formal arrest and what statements, if any, were made in response to pre-*Miranda* custodial interrogation. If such statements were made in response to custodial interrogation or were otherwise coerced, they are inadmissible; (2) Determine whether police engaged in a deliberate two-part interrogation designed to circumvent the purpose of *Miranda* warnings; and (3) Apply the proper test to determine whether the post-*Miranda* statements were admissible. If the superior court finds that there was a two-part interrogation deliberately employed to avoid *Miranda,* and that it was not "cured" under *Seibert,* or that it was not deliberate but any taint attached to allegedly coerced pre-*Miranda* statements had not dissipated, then the court must determine which statements were made before and after Zamora was in custody. If the superior court finds that the statements should have been suppressed but were admitted, then the court should vacate the conviction and hold a new trial.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge and JOHN C. GEMMILL, Judge.

---

9. Nor can we hold that the admission of the statements was harmless error, an argument not made by the state on appeal. Zamora was convicted of trespass in the first degree, which requires knowledge that the premises was a residential structure. A.R.S. § 13–1504(A)(1). The premises in which Zamora was found was vacant and without furniture. Zamora told police at one point that he thought the premises was a clubhouse and only discussed why he stayed on the premises after he allegedly learned it was not a clubhouse.