NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

BRIAN STRAIT, *Appellant.*

No. 1 CA-CR 15-0507
FILED 8-4-2016

Appeal from the Superior Court in Maricopa County
No. CR2012-153895-001 DT
The Honorable Dean M. Fink, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Robert A. Walsh
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kathryn L. Petroff
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Randall M. Howe joined.

---

**W I N T H R O P**, Judge:

¶1 Brian Strait appeals his convictions and sentences for one count of possession or use of a dangerous drug and one count of possession of drug paraphernalia. For the reasons that follow, we affirm.

**BACKGROUND**[1]

¶2 At approximately 9:00 p.m. on October 14, 2012, Phoenix police officers Ennis and Mendoza were on routine patrol duty when they noticed an isolated pickup truck, with its hood up, parked in an unlit corner of a parking lot known for a high level of drug activity. Officer Ennis parked directly behind the seemingly disabled truck, and the officers exited their patrol car, with Officer Ennis approaching the truck on the driver's side and Officer Mendoza approaching on the passenger's side. As he approached, Officer Ennis noticed the truck's windows were down, but the window shades inside the vehicle were "propped up." Officer Ennis also heard voices and observed a "glow" emanating from inside the vehicle.

¶3 Officer Ennis tapped on the shade and said, "[H]ello." The shade fell, revealing Strait in the driver's seat. Officer Ennis also saw in plain view on the dashboard a glass pipe that he immediately recognized as a "meth pipe"–in other words, a pipe commonly used for smoking methamphetamine.

¶4 Officer Ennis asked Strait to exit the truck, and Strait complied. Next, Officer Ennis instructed Strait to place his hands on the vehicle and inquired whether "he had anything on him that he shouldn't have." Strait responded, "Like what?" Officer Ennis replied, "Like drugs or guns, something like that." Strait then admitted, "Yeah. I have speed in my pocket." Officer Ennis understood the term "speed" as "a common street word used for methamphetamine." Officer Ennis placed Strait in

---

[1] We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93, 314 P.3d 1239, 1264 (2013).

handcuffs, searched him, and removed two plastic baggies from his front pockets containing "a clear crystal-like substance."

¶5        After taking Strait to the police station, Officer Ennis advised Strait of his rights pursuant to *Miranda*,[2] and Strait agreed to cooperate. When asked how he acquired the methamphetamine, Strait answered that he received it in exchange for a favor. He also disclosed he had been using methamphetamine since 1984.

¶6        The State charged Strait by indictment with one count of possession or use of a dangerous drug and one count of possession of drug paraphernalia. The State also alleged the existence of numerous historical prior felonies and aggravating circumstances.

¶7        Strait was released on bond, but failed to appear at his next court date. After a bench warrant issued, Strait was tried *in absentia*. At trial, a forensic scientist testified that the plastic baggies seized from Strait contained 570 milligrams of methamphetamine, a useable amount. The jury found Strait guilty as charged.

¶8        Approximately nineteen months later, after Strait was taken into custody, the court held a trial on his prior felony convictions and found that he had six. The court sentenced Strait to a mitigated term of seven years' imprisonment on the count of possession or use of a dangerous drug and a concurrent, minimum term of three years' imprisonment on the count of possession of drug paraphernalia.

¶9        Strait timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2016), 13-4031 (2010), and 13-4033(A)(1) and (4) (2010).

**ANALYSIS**

I.        *Admission of Incriminating Statements*

¶10       Strait contends the trial court erred by admitting evidence of incriminating statements he made both before and after his arrest. Specifically, he argues that Officer Ennis failed to provide *Miranda* warnings and, therefore, obtained the incriminating statements in violation of his constitutional rights.

---

2        *See Miranda v. Arizona*, 384 U.S. 436 (1966).

**¶11** Strait did not move to suppress his statements on this basis[3] or object at trial. Therefore, he has not preserved the issue and has forfeited the right to seek relief for all but fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, 567-68, ¶¶ 19-20, 115 P.3d 601, 607-08 (2005); *see also State v. Cañez*, 202 Ariz. 133, 155, ¶ 70, 42 P.3d 564, 586 (2002) ("[W]e will review for fundamental error even absent a pretrial motion to suppress."), *supplemented by* 205 Ariz. 620, 74 P.3d 932 (2003), *and abrogated on other grounds by State v. Valenzuela*, 239 Ariz. 299, 302-03 n.1, ¶ 11, 371 P.3d 627, 630-31 n.1 (2016); *State v. Jones*, 185 Ariz. 471, 482, 917 P.2d 200, 211 (1996) (reviewing the admission of evidence for fundamental error despite the failure to raise arguments in a motion to suppress), *abrogation on other grounds recognized by McKinney v. Ryan*, 813 F.3d 798, 816-17 (9th Cir. 2015).

**¶12** Although police officers are free to ask questions of a person who is not in custody without providing *Miranda* warnings, once a person is in custody, the police must advise the individual of certain constitutional rights; otherwise, statements made in response to questioning will be inadmissible at trial. *See Miranda*, 384 U.S. at 444; *State v. Zamora*, 220 Ariz. 63, 67, ¶ 9, 202 P.3d 528, 532 (App. 2009). Specifically, before conducting a custodial interrogation, police must advise a person "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444.

**¶13** In evaluating whether a person was subjected to custodial interrogation, we consider four primary factors: (1) the site of the questioning, (2) whether objective indicia of arrest were present, (3) the length and form of the interrogation, and (4) the method used to summon the individual. *State v. Cruz-Mata*, 138 Ariz. 370, 373, 674 P.2d 1368, 1371 (1983).

**¶14** As applied to the facts of this case, Strait was not in custody at the time he made the incriminating statement before his arrest. First, the site of the questioning was a parking lot adjacent to a public park. Nothing in the record suggests this was a coercive environment or one that would otherwise contribute to a restraint on Strait's freedom of movement to the

---

[3] Strait moved to suppress the evidence obtained from the search–namely, the glass pipe and methamphetamine–arguing that he had a reasonable expectation of privacy in his vehicle based on his use of a sunshade. The motion to suppress did not address Strait's statements to police.

degree associated with formal arrest. *See id.* Second, objective indicia of arrest were not present. Strait was not placed in any type of physical restraint, neither police officer drew his weapon, and the record is devoid of any other evidence of physical intimidation. Third, the length of the "questioning" was a mere moment and consisted of a single question frequently employed to protect officers' safety before a pat-down search; namely, whether Strait had any contraband on his person. *See State v. Morse*, 127 Ariz. 25, 28, 617 P.2d 1141, 1144 (1980) (excluding general, on-the-scene questioning during a criminal investigation from the definition of custodial interrogation). Fourth, Officers Ennis and Mendoza did not summon Strait, but came across him as they conducted a welfare check on a seemingly isolated, disabled vehicle and potentially stranded occupants. Under these circumstances, Strait was not subjected to custodial interrogation when Officer Ennis inquired about possible contraband; thus, Strait's response was admissible at trial.[4]

¶15 Next, Strait contends that the incriminating statements he made at the police station were inadmissible because Officer Ennis failed to properly advise him of his constitutional rights before questioning him. This claim, however, is not substantiated by the record. At trial, Officer Ennis testified he could not recite from memory the *Miranda* warnings, and when asked by the prosecutor to summarize for the jury the protections outlined in those warnings, Officer Ennis failed to include the warning that anything a suspect says may be used against him. He also testified, however, that he *read* the *Miranda* warnings to Strait before questioning him at the police station and further explained that he reads the *Miranda* warnings "from a *Miranda* rights card every time." Strait did not present

---

[4] Citing Officer Ennis's testimony at the suppression hearing, in which he testified he asked Strait "if he had anything else he shouldn't have," rather than Officer Ennis's trial testimony that he asked Strait "if he had anything on him that he shouldn't have," Strait argues the officer's question was so accusatory in nature that he was deprived of his freedom and a *Miranda* warning was therefore required. *See State v. Starr*, 119 Ariz. 472, 475, 581 P.2d 706, 709 (App. 1978) (recognizing "it is only when the on-the-scene questioning becomes accusatory in nature and when a reasonable man would feel he was deprived of his freedom of action in a significant way, that the *Miranda* warnings must be given" (italics added)). Even assuming Officer Ennis's question to Strait was phrased in the manner testified to at the suppression hearing, in light of the limited nature of the "questioning" and the other *Cruz-Mata* factors, the record does not support Strait's claim that the exchange was sufficiently accusatory as to deprive him of his freedom and mandate a *Miranda* warning.

any contravening evidence. Therefore, the record reflects Strait was properly advised of his *Miranda* rights before he made incriminating statements during the police interrogation.

¶16        Alternatively, Strait contends that Officer Ennis engaged in an improper two-step interrogation process, rendering the post-warning statements inadmissible. When a defendant makes inculpatory statements in response to custodial interrogation before being read his rights, and then repeats the incriminating information in response to questions after being read his rights, the latter statements may also be inadmissible. *See Missouri v. Seibert*, 542 U.S. 600, 616-17 (2004); *Zamora*, 220 Ariz. at 69, ¶ 15, 202 P.3d at 534. If "there is evidence the pre-*Miranda* warning statements were coerced or involuntary, then the post-*Miranda* statements are admissible only if 'the taint dissipated through the passing of time or a change in circumstances.'" *Zamora*, 220 Ariz. at 69, ¶ 15, 202 P.3d at 534 (citations omitted). Absent coercion, however, an incriminating statement made before the issuance of *Miranda* warnings "does not disable a person from later waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Id.* (citing *Oregon v. Elstad*, 470 U.S. 298, 318 (1985)). In evaluating the admissibility of post-warning statements, the primary concern is whether the suspect who has made "involuntary inculpatory statements" may, post-*Miranda* warnings, feel compelled to waive his right to remain silent "because he ha[s] already spoken to the police." *Id.*

¶17        Applying these principles here, we conclude no initial *Miranda* violation occurred because Strait was not in custody when Officer Ennis asked him the single question about contraband outside his vehicle, and therefore no second *Miranda* violation at the police station occurred that would implicate the prohibited two-step interrogation process. Further, immediately upon being advised of his *Miranda* rights, Strait informed Officer Ennis that he wanted to "talk." Indeed, Strait volunteered to provide information regarding other crimes in exchange for being released without charges, which demonstrates he was assertive and attempting to negotiate a deal rather than confessing in response to police intimidation. Therefore, Strait's post-*Miranda* statements were admissible at trial. *See Elstad*, 470 U.S. at 305 ("Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions." (citation omitted)).[5]

---

[5]        Even assuming the incriminating statements were elicited in violation of *Miranda* and therefore inadmissible at trial, Strait has failed to

*II.    Prosecutor's Comment on "Silence"*

¶18    Strait contends the prosecutor impermissibly commented on his silence and the trial court's curative instruction failed to ameliorate the prejudice.

¶19    During direct examination, Officer Ennis testified that he asked Strait "where he had purchased the meth that he had in his pocket," and Strait responded "that he did a favor for somebody" who "gave him the meth."  Officer Ennis also asked Strait how long he had been using "meth," and Strait answered that he had "been using meth since 1984."  On cross-examination, defense counsel elicited Officer Ennis's agreement that, in the parking lot, Strait referred to "speed" and did not "use the word methamphetamine."  Officer Ennis also conceded that the meaning of the word "speed" is not limited to methamphetamine and "could include" various "uppers."  On redirect, the prosecutor asked the officer whether he used the word "speed" or "meth" when questioning Strait at the police station, and the officer reaffirmed that he used the term "meth."  As a follow-up, the prosecutor then asked whether Strait said "anything at any point" to indicate he "didn't know it was meth," and the officer responded that Strait had not.  Referring to this testimony in her closing argument, the prosecutor asserted Strait "knew that it was methamphetamine in his pocket," as evidenced by his failure to correct Officer Ennis when he consistently used the term "meth" during interrogation.

¶20    Immediately following the State's closing argument, defense counsel requested a curative instruction to address the prosecutor's

demonstrate any prejudice.  Strait's trial defense was that he lacked knowledge the substance found on his person was methamphetamine, as ostensibly evidenced by his reference to it as "speed," which defense counsel argued could refer to various "uppers."  Other than this reference to "speed," there was no evidence that Strait lacked actual knowledge of the substance he carried or the pipe in his immediate presence.  That is, the jury heard no evidence that Strait was either misinformed about the substance's nature or that someone else had placed the drugs and pipe in his pockets and truck.  Absent such evidence, Strait's actual physical possession of the methamphetamine and pipe was sufficient to satisfy the *mens rea* requirement, and no reasonable jury could have found otherwise. *See State v. Teagle*, 217 Ariz. 17, 27, ¶ 41, 170 P.3d 266, 276 (App. 2007) (explaining the knowledge requirement may be proven either through "actual physical possession or constructive possession with actual knowledge of the presence of the narcotic substance" (citation omitted)).

"comment" on Strait's "silence" and her argument that Strait knew "that speed means meth." The prosecutor countered that she was not commenting on Strait's silence, but was instead referring to his voluntary responses in a police interview. After hearing from the parties, the trial court stated it would provide a curative instruction reminding the jurors that a defendant need not testify and forbidding them from considering Strait's absence from trial in reaching their verdicts. The court, however, denied defense counsel's request for a curative instruction that no evidence showed Strait knew "that speed means meth," concluding that was an inference the jury could reasonably draw from the evidence. The court then admonished the jury as follows:

> Okay, ladies and gentlemen, I want to remind you that you're not to consider the defendant's absence from this trial for any reason whatsoever in your deliberations, and also that you're not to consider any comments that have been made regarding defendant's right to remain silent and not make any statements, and also argument of counsel is not evidence.

¶21        We review the denial of a requested jury instruction for an abuse of discretion. *State v. Larin*, 233 Ariz. 202, 206, ¶ 6, 310 P.3d 990, 994 (App. 2013). Absent a clear abuse of that discretion and resulting prejudice, we will not reverse. *Id.*

¶22        A defendant who voluntarily speaks after receiving *Miranda* warnings has not remained silent. *Anderson v. Charles*, 447 U.S. 404, 408 (1980). Accordingly, a prosecutor may comment on statements a Mirandized defendant has made to arresting officers without "commenting on the accused's right to remain silent." *State v. Raffaele*, 113 Ariz. 259, 263, 550 P.2d 1060, 1064 (1976); *accord State v. Henry*, 176 Ariz. 569, 580, 863 P.2d 861, 872 (1993) ("When a defendant is not induced into silence by *Miranda* warnings, [] or waives his rights by answering questions after such warnings are given, due process is not implicated."). As a corollary, because an accused may not selectively invoke the privilege, a prosecutor may comment on an accused's decision to answer some questions, but refusal to answer other questions. *State v. Corrales*, 161 Ariz. 171, 172, 777 P.2d 234, 235 (App. 1989).

¶23        In this case, Strait did not exercise his right to remain silent. To the contrary, upon receiving *Miranda* warnings, he immediately stated that he wanted to "talk," and answered each question Officer Ennis posed to him. According to Officer Ennis's testimony, throughout the interview, Officer Ennis and Strait consistently and exclusively referred to the

8

substance seized from Strait as "meth." Strait also disclosed his use of "meth" for thirty years. Given these voluntary responses, the prosecutor permissibly argued that Strait's failure to challenge the repeated labeling of the seized drug as "meth" demonstrated his knowledge of the substance's nature.

¶24 Moreover, even assuming *arguendo* the prosecutor's comments were improper, any error would be harmless. The State introduced other overwhelming evidence that Strait knew the seized substance was methamphetamine: (1) it was found on his person, (2) a methamphetamine pipe was found in Strait's immediate presence, (3) Strait admitted he used methamphetamine since 1984, and (4) Officer Ennis testified that "speed" is a common "street word" for methamphetamine. Therefore, the trial court's denial of Strait's requested jury instruction, if error, was harmless.

### III. Use of Priors to Enhance Sentence

¶25 Strait argues his sentence was illegal because after the trial court found Strait had six prior felony convictions, the court did not specify which two it was using to enhance his sentence. Additionally, Strait argues that the prior convictions could not be used for enhancement purposes because the State failed to prove he was represented by counsel or had waived his right to counsel at those proceedings. Strait did not raise these objections at trial. We therefore review only for fundamental, prejudicial error. *See Henderson*, 210 Ariz. at 567-68, ¶¶ 19-20, 115 P.3d at 607-08.

¶26 At the trial on the prior felonies, the State presented certified copies of the sentencing minute entries for each of Strait's six prior felony offenses and a certified copy of Strait's prison "pen pack." A forensic scientist employed in the latent print comparative section of the police crime lab testified that she compared Strait's right thumbprint to the right thumbprint affixed to the pen pack and determined the two were a match. After taking the matter under advisement, the trial court found Strait had been convicted of six prior felony offenses. At sentencing, the court again noted the six felonies it had found and sentenced Strait as a category three repetitive offender.

¶27 Strait contends the trial court committed fundamental error by failing to identify which felonies it used to enhance his sentence. Pursuant to A.R.S. § 13-703(C) (Supp. 2015), a person shall be sentenced as a category three repetitive offender if the person "has two or more historical prior felony convictions." A "[h]istorical prior felony conviction" includes

"[a]ny felony conviction that is a third or more prior felony conviction." A.R.S. § 13-105(22)(d) (Supp. 2015). By finding Strait had six prior felony convictions, the trial court also implicitly found that four of those convictions qualified as historical prior felony convictions under A.R.S. § 13-105(22)(d). Thus, even assuming the court erred by failing to formally designate which prior felonies qualified as historical prior felony convictions for sentencing purposes, such error was neither fundamental nor prejudicial.

¶28 Next, Strait asserts the State failed to prove his prior convictions were constitutionally valid. In *State v. Reagan*, 103 Ariz. 287, 289, 440 P.2d 907, 909 (1968), our supreme court held that a prior conviction could not be used to enhance a defendant's sentence unless the record of the prior conviction affirmatively showed the defendant either was represented by counsel or had validly waived his right to counsel. Approximately thirty-three years later, our supreme court overruled *Reagan* and held "that a rebuttable presumption of regularity attaches to prior convictions used to enhance a sentence," such that the State need not prove the defendant was represented by counsel or waived counsel unless "the defendant presents some credible evidence to overcome the presumption." *State v. McCann*, 200 Ariz. 27, 28, 31, ¶¶ 1, 15, 21 P.3d 845, 846, 849 (2001).

¶29 In this case, Strait failed to present any evidence to rebut the presumption of regularity. The record also contains the six sentencing minute entry exhibits that reflect Strait was represented by counsel in each of his prior cases. Therefore, Strait has failed to demonstrate any error, much less fundamental error, on this basis. For these reasons, the trial court did not err by enhancing Strait's sentences.

## CONCLUSION

¶30 Strait's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: AA