NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANTHONY DELANTO REED, *Appellant.*

No. 1 CA-CR 19-0131
FILED 2-13-2020

Appeal from the Superior Court in Maricopa County
No. CR2017-134200-001 DT
The Honorable Michael W. Kemp, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mark E. Dwyer
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge David B. Gass joined.

**W I N T H R O P**, Judge:

¶1　　　　Anthony Delanto Reed appeals his convictions for two counts of organized retail theft and the resulting sentences.  Reed raises two issues on appeal, arguing the trial court (1) erred in denying his motion to suppress statements he made based on alleged *Miranda*[1] violations, and (2) violated Arizona Rule of Criminal Procedure ("Rule") 18.5 in its management over jury selection.  For the following reasons, we affirm Reed's convictions and sentences.

### FACTS AND PROCEDURAL HISTORY[2]

¶2　　　　On July 25, 2017, at 2:20 p.m. and again at 4:41 p.m., a black male carrying a black-and-orange backpack entered a downtown Phoenix convenience store, then walked out of the store each time with at least two 24-packs of Budweiser beer, each time without paying.[3]  The store's assistant manager, M.G., witnessed the first theft.  Another store employee, G.R., witnessed both thefts.[4]

¶3　　　　Shortly after the second theft, Phoenix Police Officers Valenzuela and Erickson stopped at the same convenience store to purchase

---

[1]　　　*Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]　　　We view the facts presented at trial in the light most favorable to sustaining the verdicts and resolve all reasonable inferences against Reed. *See State v. Kiper*, 181 Ariz. 62, 64 (App. 1994).

[3]　　　Both thefts were recorded on the store's video surveillance and later played for the jury.  Still photos produced from the video surveillance were also admitted and later shown to the jury.

[4]　　　Although at trial G.R. could recall only some parts of the second theft, she remembered and described the thief and what he had been wearing in both instances.

a drink. M.G. and G.R. told the officers about the thefts and described the thief. The officers began patrolling the nearby area, and approximately two blocks away, observed a man who closely matched the employees' descriptions. The man (later identified as Reed) had a backpack and was walking on the sidewalk while carrying two 24-packs of Budweiser beer on his shoulders.

**¶4**        Officer Valenzuela asked Reed where he had obtained the beer, and Reed stated that he got it from the convenience store up the street. Reed also told the officer "a higher power" took care of payment. Officer Valenzuela subsequently handcuffed Reed and advised him of his *Miranda* rights. Reed said he understood his rights and agreed to answer Officer Valenzuela's follow-up interview questions.[5]

**¶5**        Reed then admitted he took beer from the convenience store twice—two 24-packs of Budweiser beer the first time, and two 24-packs and one 8-pack of Budweiser beer the second time. Reed further admitted he sold the beer from the first theft and intended to sell the beer from the second theft.

**¶6**        Officer Valenzuela searched Reed's backpack incident to arrest and found an 8-pack of Budweiser beer, which was in addition to the two 24-packs Reed had been carrying. The backpack was photographed, impounded, and admitted into evidence.[6]

**¶7**        A few minutes after Reed's arrest, a police officer drove M.G. and G.R., individually, from the store to where Reed had been detained two blocks away. In separate one-on-one identifications, each of the store employees positively, and with one hundred percent confidence, identified Reed as the thief.

**¶8**        The State charged Reed by information with two counts of organized retail theft. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-1819(A)(1). Before trial, the trial court granted defense counsel's Rule 11 motion for a mental competency evaluation. Reed was later determined to be competent.

**¶9**        Reed then moved to suppress his statements to Officer Valenzuela, arguing the officer had deliberately undermined his *Miranda* rights by asking questions designed to elicit incriminating responses while

---

[5]        A subsequent interview was recorded and played at trial.

[6]        Both M.G. and G.R. identified the backpack at trial as the one the thief had been wearing.

delaying advising him of his rights until he made incriminating statements. Reed further argued that, after receiving his incriminating responses, the police immediately arrested him, read him his *Miranda* rights, and re-interviewed him, resulting in a deliberate and improper two-step interrogation process and rendering the *Miranda* warnings ineffective, in violation of *Missouri v. Seibert*, 542 U.S. 600 (2004). The State responded, and the trial court held an evidentiary hearing. After taking the matter under advisement, the trial court denied the motion to suppress, noting:

> Police may validly ask a suspect what happened without making the encounter a custodial interrogation. The Court finds no credible evidence that the police withheld the *Miranda* warning to obtain incriminating statements.

**¶10**　　　　At trial, M.G., G.R., Officer Valenzuela, and the officer who transported the store's employees to the one-on-one identifications testified. Reed declined a lesser-included shoplifting instruction, and a twelve-person jury found him guilty as charged of both counts. The trial court sentenced Reed as a Category 3 offender to fully mitigated, concurrent six-year terms of imprisonment.[7]

**¶11**　　　　We have jurisdiction over Reed's timely appeal. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A).

## ANALYSIS

### I.　　Reed's Motion to Suppress Statements

**¶12**　　　　Reed argues the trial court abused its discretion in denying his motion to suppress statements he made to Officer Valenzuela during the initial investigative stop. He further argues that if his initial statements should have been suppressed, we should conclude that statements he made after receiving *Miranda* warnings were the result of a deliberate and improper two-step interrogation process, rendering his post-*Miranda* warning statements inadmissible as well. *See generally Seibert*, 542 U.S. at 611-12; *United States v. Williams*, 435 F.3d 1148, 1158 (9th Cir. 2006). Because the initial stop did not constitute custodial interrogation for *Miranda* purposes, we find no abuse of the trial court's discretion.

---

[7]　　　The court also stated it believed the mandated minimum sentences were clearly excessive and granted Reed permission to petition the board of executive clemency for a commutation of sentence. *See* A.R.S. § 13-603(L).

*A.      Standard of Review & Applicable Law*

**¶13**      We review for an abuse of discretion the trial court's ruling denying Reed's motion to suppress based on the evidence presented at the suppression hearing. *See State v. Ellison*, 213 Ariz. 116, 126, ¶ 25 (2006). We view that evidence in the light most favorable to upholding the court's ruling. *See id.* In our review, we defer to the trial court's credibility determinations, but review *de novo* its legal conclusion. *State v. Gonzalez–Gutierrez*, 187 Ariz. 116, 118 (1996).

**¶14**      Although police officers are free to ask questions of a person who is not in custody without providing *Miranda* warnings, once a person is in custody, the police must advise the individual of certain constitutional rights; otherwise, statements made in response to questioning generally will be inadmissible at trial. *See Miranda*, 384 U.S. at 444; *State v. Zamora*, 220 Ariz. 63, 67-68, ¶ 9 (App. 2009). An individual is considered "in custody" for purposes of *Miranda* when, in light of all the circumstances, there is "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (citations and internal punctuation omitted).

**¶15**      In evaluating whether a person was subjected to custodial interrogation, Arizona courts have historically analyzed three primary factors: (1) the site of the questioning, (2) the presence of objective indicia of arrest,[8] and (3) the length and form of the interrogation. *State v. Maciel*, 240 Ariz. 46, 49, ¶ 11 (2016). The restraint on a suspect's freedom of movement does not alone establish *Miranda* custody. *Id.* at ¶ 12. Instead, the inquiry is focused not only on whether the suspect's freedom of action was significantly curtailed, but also on "whether the environment in which he was questioned presented inherently coercive pressures similar to a station house interrogation." *Id.* at 49-50, ¶¶ 12-13. Additionally, "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury*, 511 U.S. at 323.

**¶16**      When a defendant makes inculpatory statements in response to custodial interrogation before being read his rights, and then repeats the

---

[8]      Objective indicia of arrest may include the display of weapons, the use of physical restraints such as handcuffs, whether (and the manner in which) police have transported a suspect, and the booking process. *See State v. Cruz-Mata*, 138 Ariz. 370, 373 (1983).

incriminating information in response to questions after being read his rights, the latter statements may also be inadmissible. *See Seibert*, 542 U.S. at 616-17; *Zamora*, 220 Ariz. at 69, ¶ 15.

### B.    Analysis

**¶17**         "A person's freedom of movement has been significantly curtailed if a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Maciel*, 240 Ariz. at 50, ¶ 14 (citations and internal quotations omitted).  In determining how a suspect would have interpreted his freedom of movement, we consider all circumstances surrounding the interrogation, and not necessarily just the three factors previously identified. *Id.* (citations omitted).

**¶18**         Under the circumstances presented here, a reasonable person might not have felt he was at liberty to end the initial encounter with Officer Valenzuela and leave.  Both officers were in a marked City of Phoenix patrol car and wore standard-issue police uniforms with guns, badges, and tasers.  Upon noticing Reed walking down the sidewalk, Officer Valenzuela turned on his overhead lights, pulled over, exited the patrol car, and summoned Reed, asking if he would speak with the officer "for a moment."  Reed then stopped, turned around, and walked back to speak with the officer, who "kind of met him halfway."  Although Reed was not asked to produce identification, submit to a pat-down search, or sit in the back of the patrol car during questioning, and was not otherwise physically restrained, we find it unlikely a reasonable person would have felt free to simply walk away.

**¶19**         Nevertheless, even if Reed's freedom of movement was significantly curtailed, custody for *Miranda* purposes "also requires an environment presenting inherently coercive pressures that threaten to subjugate the individual to the examiner's will." *Id.* at ¶ 16 (citations and internal quotations omitted).  No one factor controls; we consider the surroundings in which a defendant is questioned, whether a defendant has been isolated before questioning, and the length of interrogation. *Id.* at 50-51, ¶¶ 16-19.  "[I]nvestigative stops conducted in public often do not constitute *Miranda* custody." *Id.* at ¶ 18 (citation omitted).  The ultimate question is whether the police officers increased the likelihood of self-incrimination by engaging in an unreasonable delay to gain an advantage over Reed. *See id.* at 51, ¶ 20.

**¶20**         Here, Reed was not questioned in isolation or in unfamiliar surroundings.  Officer Valenzuela first questioned Reed exactly where he

found him—standing on a sidewalk in downtown Phoenix. Reed was not transported to a different location, much less to a police-dominated atmosphere like a station house. *See id.* at ¶ 21. Further, the entire encounter occurred in public and was always visible to any passersby. *See id.* at ¶ 22. No unreasonable delay occurred in the investigation. *See id.* at ¶ 23. The investigative detention—from the time Officer Valenzuela summoned Reed to the time Reed was arrested—lasted at most a couple of minutes. Moreover, other objective factors indicative of *Miranda* custody are absent here. *See id.* at 52, ¶ 26. The police presence was quite modest; only Officer Valenzuela questioned Reed, and only one other officer—Officer Erickson—was present. The police never told Reed his detention was not temporary,[9] and the length of the initial "questioning" before Reed was formally detained and Mirandized was quite brief, consisting of two short questions designed to ascertain what happened; namely, where Reed had obtained the beer he was carrying and whether he had paid for it. The police did not promise Reed anything, draw a weapon or otherwise threaten Reed with force, make exaggerated displays of authority or physical intimidation, or otherwise employ coercive tactics that might be associated with objective indicia of arrest. *See id.* at ¶ 27. Reed appeared calm and cooperative in answering the questions and gave no indication he wanted to stop talking and leave. In sum, the objective circumstances of Reed's sidewalk questioning fail to support either that the questioning was coercive or that Reed's will was overborne.[10]

**¶21**         Accordingly, the trial court did not abuse its discretion in concluding Reed was not in custody at the time he made the incriminating statements before his arrest. Because we agree with the trial court's ultimate ruling, we need not address Reed's argument that, because his earlier statements violated *Miranda*, his post-arrest statements should also have been suppressed based on *Seibert*.

---

9       In fact, after his recorded interview—which occurred after he had been Mirandized—Reed asked Officer Valenzuela if the officer "could just write him a citation and let him go."

10      Moreover, whether Officer Valenzuela would likely have followed or chased Reed had he attempted to run is of no consequence because *Miranda* custody does not turn on an officer's undisclosed intentions, knowledge, or suspicions. *See Maciel*, 240 Ariz. at 52, ¶ 28.

## II.   Jury Selection

**¶22**        Reed also argues the trial court violated Rule 18.5(f) by requiring the parties to conduct their peremptory strikes before concluding the "for cause" examination of the jury.  He maintains the court's decision to allow defense counsel to conduct additional "for cause" examination after peremptory strikes had been completed caused confusion in the jury selection process that "tainted" the trial and requires reversal.

**¶23**        The State disputes whether Rule 18.5(f) was violated, arguing the trial court concluded its voir dire examination and completed its "for cause" strikes before the parties were given leave to exercise their peremptory strikes, and any confusion in the jury selection process was entirely due to defense counsel's own mistake or misunderstanding, which both caused her to waive the defense's opportunity to voir dire the panel further before exercising Reed's peremptory strikes and required the trial court to take additional measures to accommodate a belated voir dire by the defense.

### A.   Standard of Review & Applicable Law

**¶24**        "A defendant is not entitled to be tried by any particular jury but only by one which is fair and impartial."  *State v. Hilliard*, 89 Ariz. 129, 133 (1961) (citations omitted).

**¶25**        Rule 18.5 dictates the process to be used in jury selection. Under Rule 18.5, the trial court is responsible for conducting and controlling voir dire examination and determining the presence or absence of juror prejudice.  *See* Ariz. R. Crim. P. 18.5(c)-(e); *State v. Smith*, 114 Ariz. 415, 418 (1977).  "Upon request, the court must allow the parties a reasonable time, with other reasonable limitations, to conduct a further oral examination of the prospective jurors," Ariz. R. Crim. P. 18.5(d), but the extent of the examination to determine the presence or absence of prejudice is left to the sound discretion of the trial court, *Smith*, 114 Ariz. at 418.

**¶26**        Pursuant to Rule 18.5(f), "[a]ll challenges for cause must be made and decided before the court may call on the parties to exercise their peremptory challenges."  Unlike the right to an impartial jury guaranteed by the Sixth Amendment, however, the right to exercise peremptory challenges is not protected by either the federal or the state constitution. *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000); *State ex rel. Romley v. Superior Court*, 181 Ariz. 271, 274 (App. 1995).

¶27         We review for an abuse of discretion a trial court's rulings on voir dire of prospective jurors. *State v. Glassel*, 211 Ariz. 33, 45, ¶ 36 (2005). If such an error occurs, and the defendant has preserved the issue by objecting at trial, we review for harmless error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005). Thus, a defendant's use of a peremptory strike to remove a prospective juror, whom the trial court should have removed for cause, is subject to harmless error review. *See Martinez-Salazar*, 528 U.S. at 307-17; *State v. Hickman*, 205 Ariz. 192, 194, 196-97, 201, ¶¶ 6, 21, 39-40 (2003) (overruling *State v. Huerta*, 175 Ariz. 262 (1993)). "Harmless error review places the burden on the state to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *Henderson*, 210 Ariz. at 567, ¶ 18 (citation omitted).

> *B.     Analysis*

¶28         We agree with Reed that, on this record, the jury selection process became "convoluted" after the trial court concluded its initial "for cause" jury strikes. We further agree that Reed properly preserved the issue for review.

¶29         The convoluted process was, however, occasioned by defense counsel's apparent misapprehension of the jury selection process and/or acknowledged misunderstanding of the trial court's statements. These issues resulted in the trial court's misguided effort to remedy defense counsel's misapprehension and/or misunderstanding while attempting to balance time considerations by allowing defense counsel to conduct further oral examination of prospective jurors and additional "for cause" and peremptory strikes after the "for cause" and peremptory strikes had been completed. Regardless of its motive, the trial court's inexplicably revised approach to jury selection violated the plain language of Rule 18.5(f) and was an abuse of that court's discretion.

¶30         Nevertheless, we need not vacate Reed's convictions on this basis. Our complete review of the record makes clear the error was harmless beyond a reasonable doubt because nothing in the record indicates that any juror selected had indicated a prohibited bias or partiality. Thus, on this record, Reed received that to which he was entitled—the opportunity to be tried by a fair and impartial jury. Further, the jury's guilty verdicts were based on overwhelming evidence. Accordingly, we can say beyond a reasonable doubt that the court's error did not contribute to or affect the verdicts.

**CONCLUSION**

¶31   Reed's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA