IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee/Cross-Appellant,*

*v.*

LUIS ALDANA, *Appellant/Cross-Appellee.*

No. 1 CA-CR 20-0134
1 CA-CR 20-0365
(Consolidated)
FILED 8-12-2021

Appeal from the Superior Court in Maricopa County
No. CR2017-110517-001
The Honorable Laura M. Reckart, Judge

**CONVICTIONS AFFIRMED, SENTENCES VACATED, AND
REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee/Cross-Appellant*

Maricopa County Public Defender's Office, Phoenix
By Robert W. Doyle
*Counsel for Appellant/Cross-Appellee*

---

**OPINION**

Judge Randall M. Howe delivered the opinion of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Maria Elena Cruz joined.

---

**HOWE**, Judge:

¶1        Luis Aldana appeals his convictions and sentences for attempted second-degree murder, aggravated assault, drive-by shooting, and misconduct involving weapons. He argues that the court erred by not suppressing statements he made during a police interview, which he asserts was part of a "two-stage" interrogation in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) and *Missouri v. Seibert*, 542 U.S. 600 (2004). The State cross-appeals from the imposed sentence, arguing that the trial court incorrectly concluded that because Aldana was on "community supervision" at the time of the instant offense, he was not "on release or escape from confinement" for purposes of sentencing under A.R.S. § 13–708(B).

¶2        We affirm Aldana's conviction because the police did not engage in an improper "two-stage" interrogation. We vacate the sentences imposed, however, and remand for resentencing. Under the plain language of A.R.S. § 13–708, a person who is on community supervision for a prior conviction involving a dangerous offense is on "release" subject to the sentencing requirements of A.R.S. § 13–708(B).

**BACKGROUND**

¶3        An Arizona Department of Public Safety trooper conducted a traffic stop of the SUV Aldana was driving. The trooper got out of his patrol car and directed Aldana to roll down the SUV's darkly-tinted windows and show his hands. Aldana grabbed a handgun and fired several times at the trooper. The trooper returned fire, shooting Aldana in his shoulder. Aldana fled in the SUV.

¶4        Later that day, officers of the Phoenix Special Assignments Unit, along with officers from other agencies, found Aldana riding in a friend's vehicle on his way to a hospital to treat the gunshot wound. The officers arrested Aldana and accompanied him to a hospital. Two detectives stayed with Aldana as he waited for surgery but did not read Aldana his

2

*Miranda* rights because they did not interview him. Aldana, however, engaged in "small talk" with them and incriminated himself in the shooting. At that point, one of the detectives began recording Aldana's statements. The detectives did not ask about the shooting but did ask whether Aldana was on parole or probation.

**¶5**        When Aldana was released from the hospital, police took him into custody. At the police station, Detective Ryan Dodge, who was not at the hospital with Aldana and did not know that he had made incriminating statements there, read him his *Miranda*. Aldana waived his rights and again made incriminating statements during his interview with Detective Dodge.

**¶6**        The State charged Aldana with attempt to commit second-degree murder, aggravated assault, and drive by shooting, all class 2 dangerous felonies. The State also charged him with misconduct involving weapons, a class 4 dangerous felony, which was later severed from the other charges and tried separately. The State alleged under A.R.S. § 13–708 that Aldana committed the offenses while on "probation, parole, community supervision, and/or any other release or escape from confinement" from a previous armed robbery conviction. The State also alleged multiple aggravating circumstances.

**¶7**        Before trial, Aldana moved to suppress the statements he had made at the hospital and during the subsequent interview with Detective Dodge. He claimed that his statements at the hospital were inadmissible because the officers had failed to inform him of his *Miranda* rights, and his statements were otherwise involuntary. He argued that his interview statements were inadmissible because Detective Dodge's *Miranda* advisement did not cure the constitutional violation that occurred at the hospital.

**¶8**        The trial court held an evidentiary hearing and granted the suppression motion in part and denied it in part. The court found that Aldana's hospital statements were inadmissible because although he had made those statements voluntarily, he did so while subject to custodial interrogation without being advised of his *Miranda* rights. The court found admissible the statements Aldana made during his interview at the police station, however, because Detective Dodge properly informed him of his *Miranda* rights and "there was a distinction in time, place and individuals such that there is no taint or there is no issue between those two that would create a situation where the first failure to give [*Miranda*] would somehow impact the second interview."

¶9  The jury found Aldana guilty of the charged offenses and found multiple aggravating factors for each offense. The jury also found that Aldana was on "parole or community supervision" when he committed the offenses. At sentencing, the State requested imposition of maximum sentences under A.R.S. § 13–708(B) because he committed the offenses while on community supervision for a conviction of a serious offense. The court denied the State's request, finding the statute did not apply to defendants who commit offenses while on community supervision. The court imposed concurrent aggravated prison sentences, the longest being 23 years for the class 2 dangerous felonies. Aldana, with the court's permission, filed a delayed notice of appeal. The State also timely cross-appealed.

## DISCUSSION

**I. The trial court did not err in denying Aldana's motion to suppress the statements he made to Detective Dodge.**

¶10  Aldana argues that the statements he made during his interview with Detective Dodge were inadmissible, and that the trial court therefore erred by denying the motion to suppress them. Specifically, Aldana contends that he was subjected to a "two-stage" interrogation technique deemed unconstitutional in *Seibert*, 542 U.S. at 642 (Kennedy, J., concurring in judgment) (statements inadmissible if interrogators use two-step technique to undermine *Miranda* warnings).[1] A trial court's ruling on a motion to suppress a defendant's statements is reviewed for an abuse of discretion. *State v. Newell,* 212 Ariz. 389, 396 ¶ 22 n. 6 (2006). In such a review, an appellate court considers only the evidence presented at the suppression hearing, and reviews the evidence in a light most favorable to upholding the ruling. *Id.*; *State v. Hyde*, 186 Ariz. 252, 265 (1996). We defer to the trial court's factual determinations but review the court's ultimate legal conclusion *de novo. State v. Gonzalez–Gutierrez,* 187 Ariz. 116, 118 (1996).

¶11  To comply with the Fifth Amendment's privilege against self-incrimination, *Miranda* requires the police to warn suspects who are in custody of their rights before initiating questioning. *State v. Spears*, 184 Ariz.

---

[1] As recognized in *State v. Zamora*, because the opinion of the United States Supreme Court in *Seibert* was merely a plurality, Justice Kennedy's separate concurring opinion is controlling on this issue "because it is the narrowest opinion concurring in the Court's judgment." 220 Ariz. 63, 70 ¶ 16 (App. 2009).

277, 286 (1996). Thus, statements an in-custody suspect makes before a *Miranda* advisement are generally inadmissible, and post-advisement statements are generally admissible. *Montes*, 136 Ariz. at 494. When an in-custody suspect who has given voluntary but unwarned statements makes additional statements after a subsequent-*Miranda* warning, the additional statements ordinarily are admissible while the unwarned statements are not. See *Oregon v. Elstad*, 470 U.S. 298, 314 (1985). A court nevertheless may suppress statements made after a *Miranda* warning if it finds that the police engaged in a "two-stage" interrogation process with the intent to deliberately obtain statements in violation of *Miranda*. *Seibert*, 542 U.S. at 618-22 (Kennedy, J., concurring in judgment). This court described an impermissible "two-stage" interrogation generally as follows:

> In the first stage, police interrogate a person in custody without having given the person his *Miranda* warnings and the person has made statements in response to that questioning. Then, in the second stage, the police give the person his *Miranda* warnings, the person waives his right to remain silent[,] and the person repeats his prior statements in response to the police repeating the questions or lines of questions asked prior to the *Miranda* warnings being given.

*Zamora*, 220 Ariz. at 65–66 ¶ 1 n.2.

**¶12** Here, the evidence at the suppression hearing shows that the detectives at the hospital did not deliberately obtain statements in violation of *Miranda* in a coordinated attempt with Detective Dodge to obtain a subsequently Mirandized confession at the formal interview. *Cf. Seibert*, 542 U.S. at 604 (defendant's post-*Miranda* statement in a "two-stage" interrogation is inadmissible where "police protocol for custodial interrogation . . . calls for giving no [*Miranda*] warnings . . . until interrogation has produced a confession"). Indeed, at the time Detective Dodge interviewed Aldana, he was not aware of Aldana's earlier incriminating statements at the hospital. Accordingly, the trial court did not abuse its discretion in finding that Aldana's interview statements were not the result of an improper "two-stage" interrogation.

## II.    The trial court erred in concluding that A.R.S. § 13–708(B) did not apply to Aldana's sentencing.

**¶13** The State argues that the trial court erred by declining to apply A.R.S. § 13–708(B) in sentencing Aldana because the court believed that the statute's reference to "release" did not include community

supervision. "The failure to impose a sentence in conformity with mandatory sentencing statutes makes the resulting sentence illegal." *State v. Brock*, 248 Ariz. 583, 592–93 ¶ 27 (App. 2020). Whether the trial court correctly construed the sentencing statute is a question of law reviewed de novo. *Id*. at 93 ¶ 27.

**¶14**　　　　When interpreting a statute, our goal is to give effect to the legislature's intent. *Id.* at 184 ¶ 11. We look first to the language of the statute because it is the best indication of the legislature's intent, *id.*, and construe statutes that "relate to the same subject matter or have the same general purpose as one another" as though they constitute one law, *State v. Gamez*, 227 Ariz. 445, 449 ¶ 27 (App. 2011); *see also Wyatt v. Wehmueller*, 167 Ariz. 281, 284 (1991) (Different sections of a single statute should be interpreted consistently.). "When the text is clear and unambiguous, we apply the plain meaning and our inquiry ends." *State v. Burbey*, 243 Ariz. 145, 146 ¶ 5 (2017).

**¶15**　　　　Aldana's release on community supervision is "release" for purposes of A.R.S. § 13–708(B). Titled "Offenses committed while released from confinement," the statute provides, in relevant part:

> **A.** A person who is convicted of any felony involving a dangerous offense that is committed while the person is on probation for a conviction of a felony offense or parole, work furlough, community supervision or any other release or has escaped from confinement for conviction of a felony offense shall be sentenced to imprisonment for not less than the presumptive sentence authorized under this chapter . . . .

> **B.** A person who is convicted of a dangerous offense that is committed while the person is on release or has escaped from confinement for a conviction of a serious offense as defined in § 13–706, . . . shall be sentenced to the maximum sentence authorized under this chapter . . . . If the court finds that at least two substantial aggravating circumstances listed in § 13–701, subsection D apply, the court may increase the maximum sentence authorized under this chapter by up to twenty-five percent.

> **C.** A person who is convicted of any felony offense that is not included in subsection A or B of this section and that is committed while the person is on probation for a conviction of a felony offense or parole, work furlough, community

6

supervision or any other release or escape from confinement for conviction of a felony offense shall be sentenced to a term of not less than the presumptive sentence authorized for the offense . . . .

**D.** A person who is convicted of committing any felony offense that is committed while the person is released on bond or on the person's own recognizance on a separate felony offense or while the person is escaped from preconviction custody for a separate felony offense shall be sentenced to a term of imprisonment two years longer than would otherwise be imposed for the felony offense committed while on release.

**¶16** Section 13–708's language is clear and unambiguous. Consistent with the title of chapter 7, subsection A lists specific forms of release, including "community supervision," and provides a catchall for all release types with the phrase "or any other release." A.R.S. § 13–708(A). Consistent with the title of chapter 7 and subsection A, subsection B refers generally to the catchall "release or . . .escape[] from confinement," which includes the specific forms of release enumerated in subsection A. A.R.S. § 13–708(B). While subsection A applies to defendants convicted of a "felony involving a dangerous offense" committed while on release after any felony conviction, subsection B applies to defendants being sentenced for a dangerous offense committed while "on release . . . from confinement of a serious offense." Aldana committed the present offenses while released from confinement to serve a term of community supervision for his conviction for armed robbery, a serious offense. *See* A.R.S. § 13–706(F)(1)(h) (armed robbery a "serious offense"); A.R.S. § 41–1604.07(E) ("A prisoner who has reached the prisoner's earned release date or sentence expiration date shall be released to begin the prisoner's term of community supervision imposed by the court."); A.R.S. § 13–105(5) ("'Community supervision' means that portion of a felony sentence that is imposed by the court . . . and that is served in the community after completing a period of imprisonment . . . ."). Thus, the plain language of A.R.S. § 13–708(B) applies to Aldana.

**¶17** Aldana nonetheless argues that reading "community supervision" into the term "release" as used in subsection B renders A.R.S. § 13–708(A) meaningless. To the contrary, the subsections apply to different classes of repetitive offenders. Subsection A applies to dangerous offenders who were on release for a non-serious felony conviction, while subsection B applies to dangerous offenders who were on release for a serious felony conviction.

**¶18** Aldana also argues that, considering subsection A's express reference to "parole, work furlough, community supervision," subsection B's reference to "on release" indicates a legislative intent that only defendants who are on pre-trial release, not post-conviction release, are subject to that provision's maximum sentence requirement. Aldana provides no authority for this argument, however, and the statute's plain language contradicts it. Subsection B applies only if the person "is on release or has escaped from confinement for a *conviction* of a serious offense," which necessarily excludes pretrial release. *See also State v. Barnett*, 142 Ariz. 592, 596 (1984) (construing A.R.S § 13–708's predecessor's statute's language of "or any other release" to be release after a conviction). We need go no further. *State v. Brock*, 248 Ariz. 583, 589 ¶ 13 (App. 2020) ("When the text is clear and unambiguous, we apply the plain meaning and our inquiry ends.").

**¶19** Because Aldana was under community supervision—and thus was on release from confinement—for a conviction of a serious offense, when he committed the dangerous offenses in this case, A.R.S. § 13–708(B) required the trial court to sentence Aldana to at least the maximum sentence provided. The court erred in concluding otherwise.

## CONCLUSION

**¶20** Aldana's convictions are affirmed, and his sentences are vacated. Upon remand, the trial court shall sentence Aldana pursuant to A.R.S. § 13–708(B).

