NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

MATTHEW EUGENE WHITE, *Appellant*.

No. 1 CA-CR 21-0228
FILED 8-18-2022

Appeal from the Superior Court in Mohave County
No. S8015CR202001427
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Jill L. Evans, Attorney at Law, Flagstaff
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Cynthia J. Bailey and Judge D. Steven Williams joined.

---

**S W A N N**, Judge:

¶1        Matthew Eugene White appeals from his conviction and sentence for unlawful flight from a pursuing law enforcement vehicle, arguing the trial court should have granted his motions to continue the trial and suppress his statements to police under *Miranda v. Arizona*, 384 U.S. 436 (1966).  Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        White was riding a dirt bike on a public street when he passed a police vehicle carrying two officers.  The vehicle was unmarked but equipped with lights and a siren.  Noticing the bike had no license plate, the officers attempted to conduct a stop by catching up to White and activating the vehicle's lights and siren.  White looked over his shoulder at the police vehicle and accelerated.  Attempting to turn onto a dirt alleyway, he crashed into a fence.

¶3        One officer handcuffed White while the other summoned additional police and medical assistance.  A third officer arrived to investigate the accident.  At White's trial, the officers testified he made three separate but similar statements—the first after being handcuffed at the scene of the crash, the second as he waited in an ambulance to be transported to a hospital, and the third at the hospital—conveying he knew the officers were trying to stop him but "ran" from them because he "didn't want his bike impounded."  There was evidence White received a *Miranda* warning before making the third statement but not before the first two.

¶4        A jury found White guilty of unlawful flight from a pursuing law enforcement vehicle.  The superior court suspended imposition of sentence and placed him on 18 months' probation.[1]  White appeals.

---

[1]        Three other charges against White were dismissed before trial.

**DISCUSSION**

**¶5**     White challenges the superior court's denial of his motions for a continuance and to suppress his statements to police. We recite the circumstances underlying both motions together.

**¶6**     At the final management conference four weeks before trial, White requested a continuance because only one of three officer interviews had been conducted, there was reason to believe he would need to file a "*Miranda* motion," and the state had extended a new plea offer. The court affirmed the trial date but scheduled a status conference in the interim so that defense counsel could provide an update on "whether [he would] be ready for the trial" after discussing another plea with White and "perhaps do[ing] the interviews."

**¶7**     At the status conference 10 days before trial, White said he would not take a plea but was not ready for trial because the officer interviews had only been completed the week before and those interviews revealed a need to file a motion to suppress under *Miranda*. White asked for more time to brief the issue and hold a hearing. The trial court refused to continue the trial.

**¶8**     White promptly filed a motion to suppress his statements to law enforcement. After jury selection, the superior court held an evidentiary hearing on White's motion and denied it.

**¶9**     We review the superior court's denial of a request for continuance for a "clear abuse of discretion." *State v. Dixon*, 226 Ariz. 545, 555, ¶ 53 (2011) (citation and internal quotation marks omitted). "We will not find that a trial court abused its discretion in denying a continuance unless the defendant shows prejudice." *State v. Burns*, 237 Ariz. 1, 11, ¶ 10 (2015). No abuse occurred here because White suffered no prejudice. His reason for the continuance evaporated when the court heard his suppression motion. *See* Ariz. R. Crim. P. 8.5(b) ("A court may continue trial only on a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice, and only for so long as is necessary to serve the interests of justice.").

**¶10**     The court's suppression ruling is also subject to an abuse of discretion standard—which requires us to review its legal conclusions de novo while deferring to its factual findings. *State v. Bennett*, 237 Ariz. 356, 358, ¶ 8 (App. 2015). We consider only the evidence presented at the suppression hearing and view it in the light most favorable to sustaining the court's decision. *Id.*

¶11 The three police officers who had contact with White at the incident scene and hospital all testified at the suppression hearing. The officer who first handcuffed White testified that "[a]t one point [White] said he didn't want his bike impounded . . . and that's why he ran from us," but the officer could not recall whether White made the statement spontaneously or in response to questioning. The other officer involved in the pursuit had stepped away during the conversation and could not testify to what was said.

¶12 The officer who arrived after the pursuit testified that she spoke with White in the ambulance without other officers present. She asked White what happened and he responded, "they almost ran me over." The officer then asked if White had seen the lights and heard the siren. White "eventually" answered yes and elaborated that his license was suspended and he did not want his bike taken.

¶13 The officers involved in the pursuit testified that after the ambulance left with White, they remained at the incident scene for 40 to 60 minutes and then went to see White at the hospital. The officer who had received White's first statement after the crash testified that he confirmed White suffered no serious injuries and then advised him of his *Miranda* rights. White conveyed he understood those rights and was willing to talk. The officer then asked White why he "ran," and White answered he "didn't want to get his bike impounded." White stated he knew the police were "trying to stop him" and explained, upon further questioning, that the bike was not registered because he did not have or could not find its title.

¶14 White also testified at the evidentiary hearing. He said the officer who handcuffed him after the crash asked him no questions and that White himself said nothing about fleeing because he did not want his bike impounded. White testified he could not remember talking about the pursuit with the officers at the hospital but believed he was not advised of his *Miranda* rights until he was taken to the police station after being discharged. The officer who spoke to White at the hospital retook the stand and testified he was "100 percent" certain he had advised White of his *Miranda* rights at that time.

¶15 Initially, the superior court ruled that White's motion did not seek suppression based on a *Miranda* violation but rather because the statements were involuntary. *See, e.g., Oregon v. Elstad*, 470 U.S. 298, 306–07 & n.1 (1985) (observing that the "*Miranda* exclusionary rule . . . sweeps more broadly than the Fifth Amendment itself" by "requiring suppression of all unwarned statements," even if voluntary). The court observed, however,

that the factors involved in a *Miranda* analysis are relevant to a voluntariness determination, and it made findings and legal conclusions related to *Miranda*.

**¶16** The court found White was in custody when he made the first incriminatory statement after the crash but found it was "somewhat unclear" whether the statement was "unsolicited" or the result of interrogation. The court determined the statement was voluntary "whether or not" it was "made at or in response to any question." The court found that White's statement to the officer in the ambulance resulted from custodial interrogation—and was therefore "in violation of *Miranda*"—but that it was voluntarily made. The court found White was in custody when questioned at the hospital but concluded his statement was voluntarily made and that he was informed of, and validly waived, his *Miranda* rights. Ultimately, the court denied White's motion after determining all three statements were voluntary.

**¶17** White contends the superior court should have suppressed his pre-*Miranda* statements because they were obtained in violation of *Miranda*. He argues that even assuming the post-*Miranda* statement was properly admitted, admission of the pre-*Miranda* statements was not harmless. Alternatively, White contends the court should have suppressed all three statements because his post-*Miranda* statement was "tainted" by the circumstances of the pre-*Miranda* statements.[2]

**¶18** We perceive no reversible error. First, we note that White does not challenge the superior court's conclusion that none of his statements were coerced and therefore constitutionally involuntary. *See State v. Boggs*, 218 Ariz. 325, 336, ¶ 44 (2008) ("To find a confession involuntary, we must find both coercive police behavior and a causal relation between the coercive behavior and the defendant's overborne will." (citation omitted)). We therefore turn to his assertion that the court should have suppressed his statements under *Miranda*. The record shows, and the state acknowledges, that White's motion to suppress alleged violations of *Miranda*—despite the superior court's determination to the contrary. The court made sufficient findings to enable our review of its

---

[2] White's appellate brief refers to the post-*Miranda* statement as occurring at the police station even though neither the suppression hearing nor White's motion to suppress addressed any statements made at the police station. We assume, for purposes of our analysis, that White intended to refer to the post-*Miranda* statement made at the hospital and that references to the police station were unintentional.

decision under *Miranda*, and we must affirm that decision if it is "legally correct for any reason supported by the record." *State v. Moreno*, 236 Ariz. 347, 350, ¶ 5 (App. 2014).

**¶19** "To comply with the Fifth Amendment's privilege against self-incrimination, *Miranda* requires the police to warn suspects who are in custody of their rights before initiating questioning." *State v. Aldana*, 252 Ariz. 69, 72, ¶ 11 (App. 2021). "If the police fail to inform a suspect of his rights before engaging in 'custodial interrogation,' statements made by the suspect are excluded from evidence at trial unless they are spontaneous." *State v. Zamora*, 220 Ariz. 63, 68, ¶ 10 (App. 2009). Here, the trial court found that White's statement when handcuffed after the crash was made in custody, but it was "unclear" whether the statement resulted from interrogation. The court found that White's statement in the ambulance was the product of custodial interrogation. The court's findings are supported by the record.

**¶20** Even assuming both of White's pre-*Miranda* statements should have been suppressed,[3] he does not establish reversible error because his post-*Miranda* statement was properly admitted, and the state has proved beyond a reasonable doubt that admission of the pre-*Miranda* statements "did not contribute to or affect the verdict or sentence." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005).

**¶21** In *Oregon v. Elstad*, 470 U.S. 298 (1985), and *Missouri v. Seibert*, 542 U.S. 600 (2004), the United States Supreme Court addressed the question whether a *Miranda* warning given between serial confessions is effective to admit the post-*Miranda* confession. *Elstad* holds that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." 470 U.S. at 318. Accordingly, "[w]hen an in-custody suspect who has given voluntary but unwarned statements makes additional statements after a subsequent *Miranda* warning, the additional statements ordinarily are admissible while the unwarned statements are not." *Aldana*, 252 Ariz. at 72, ¶ 11 (citing *Elstad*, 470 U.S. at 314). *Seibert* holds that a subsequent *Miranda* warning may be ineffective if "police engaged in a 'two-stage' interrogation process with the

---

[3] Although the court did not definitively rule whether White's first statement resulted from interrogation, the state bore the burden, after White established a prima facie case for suppression, "of proving by a preponderance of the evidence the lawfulness in all respects of the acquisition of" White's statement. Ariz. R. Crim. P. 16.2(b)(1).

intent to deliberately obtain statements in violation of *Miranda*."[4]  *Aldana*, 252 Ariz. at 72, ¶ 11 (citing *Seibert*, 542 U.S. at 618–22 (Kennedy, J., concurring)).[5]

**¶22**        Whether a post-*Miranda* statement should be suppressed because of an improper two-stage interrogation turns first on whether police deliberately withheld the *Miranda* warning during the earlier phase of questioning.  *Zamora*, 220 Ariz. at 69, ¶ 16.  If the evidence "support[s] an inference that the two-step interrogation procedure was used to undermine the *Miranda* warning," *id.* at 70, ¶ 16 (citation and internal quotation marks omitted), the court next determines whether the *Miranda* warning given was effective, *id.* at ¶ 17.  That analysis requires looking at "objective and curative factors" including

> (1) the completeness and detail of the prewarning interrogation, (2) the overlapping content of the two rounds of interrogation, (3) the timing and circumstances of both interrogations, (4) the continuity of police personnel, (5) the extent to which the interrogator's questions treated the second round of interrogation as continuous with the first and (6) whether any curative measures were taken.

*Id.* (citation omitted); *cf. Aldana*, 252 Ariz. at 72, ¶ 12 (declining to consider the factors concerning the effectiveness of a *Miranda* warning after determining the initial withholding of *Miranda* was not deliberate).  In *Seibert*, the U.S. Supreme Court held that a *Miranda* warning was ineffective when it was deliberately withheld until after the suspect confessed as part of a "coordinated and continuing interrogation" that was likely to prevent the suspect from "understand[ing] the nature of his rights and the consequences of

---

[4]        In a two-stage interrogation, "police [first] interrogate a person in custody without having given the person his *Miranda* warnings and the person [makes] statements in response to that questioning.  Then, in the second stage, the police give the person his *Miranda* warnings, the person waives his right to remain silent and the person repeats his prior statements in response to the police repeating the questions or lines of questions asked prior to the *Miranda* warnings being given."  *Zamora*, 220 Ariz. at 66, ¶ 1 n.2 (citing *Seibert*, 542 U.S. at 604).

[5]        Because *Seibert* is a plurality opinion, we interpret its holding based on Justice Kennedy's concurrence—the narrowest opinion concurring in the judgment.  *Zamora*, 220 Ariz. at 70, ¶ 16 n.8.

abandoning them." 542 U.S. at 613 (citation and internal quotation marks omitted).

¶23 Here, the superior court acted within its discretion by concluding that White's case did not present "the kind of two-tiered *Miranda* warnings that is prohibited by *Seibert*." The interrogation process found to violate *Miranda* in *Seibert* entailed pre-*Miranda* questioning at the police station that "was systematic, exhaustive, and managed with psychological skill," followed by post-*Miranda* questioning by the same officer, "after a pause of only 15 to 20 minutes, in the same place as the unwarned segment," that included "references back to the confession already given," imparting an "impression that the further questioning was a mere continuation of the earlier questions and responses." *Id.* at 616.

¶24 The officers' communications with White, by contrast, do not show they deliberately withheld the *Miranda* warning in a manner likely "to obscure both the practical and legal significance of the admonition when finally given." *Id.* at 620 (Kennedy, J., concurring). The record is inconclusive as to whether the officer who received White's first statement questioned him, let alone whether he deliberately avoided informing White of his *Miranda* rights. Although the officer who spoke with White in the ambulance indisputably questioned him, there is no evidence suggesting that officer's interrogation was part of a "coordinated" effort to undermine *Miranda*. And even though the officer who received White's first pre-*Miranda* statement was the same officer who questioned him post-*Miranda*, the passage of time, combined with the change of setting, supports a finding that there was no "continuum, in which it would have been unnatural [for White] to refuse to repeat at the second stage what had been said before." *Id.* at 617. Given the simple circumstances of this case, we do not give significant weight to the overlapping content of each interrogation. Because the record supports a finding that "the officers [did not] exploit [White's] unwarned admission to pressure [him] into waiving his right to remain silent," *Elstad*, 470 U.S. at 316, we affirm the superior court's determination that White effectively waived his *Miranda* rights at the hospital.

¶25 Having determined the superior court permissibly admitted the post-*Miranda* statement, we further conclude that admission of the pre-*Miranda* statements was harmless. The pre-*Miranda* statements were "entirely cumulative" of the post-*Miranda* statement. *See State v. Williams*, 133 Ariz. 220, 226 (1982) ("We have held that erroneous admission of evidence which was entirely cumulative constituted harmless error."). White's contention that he could have made a stronger argument for never

having made the post-*Miranda* statement if the court had excluded the pre-*Miranda* statements is speculative—especially considering he did not testify at trial. *Cf. State v. Duran*, 233 Ariz. 310, 312, ¶ 12 (2013) (where impact of trial court's evidentiary error was "inherently speculative" without the defendant's testimony, the defendant's decision not to testify prevented the appellate court from conducting the "fact-specific inquiry" necessary to determine whether admission of the evidence was harmless).

**CONCLUSION**

¶26       We affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA