NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

JASON CLIFFORD DENNIS HYDE, *Appellant*.

No. 1 CA-CR 22-0600
FILED 1-23-2024

---

Appeal from the Superior Court in Mohave County
No. S8015CR202100541
The Honorable Richard D. Lambert, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Brian Coffman
*Counsel for Appellee*

DwaneCates.com PLLC, Phoenix
By Aaron Reed
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Judge Jennifer M. Perkins and Judge Daniel J. Kiley joined.

---

H O W E, Judge:

¶1        Jason Clifford Dennis Hyde appeals his convictions and sentences for criminal damage and for failure to stop at the scene of an accident involving serious physical injury or death. We affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        One night in May 2021, a person requested a ride from a shuttle company. One of the company's drivers picked the passenger up in a Kia Soul. As they were traveling south on McCulloch Boulevard in Lake Havasu City, Arizona, a Dodge Dakota pickup truck hit them. The impact caused the Kia to lift onto two wheels, cross over from the southbound lanes across the northbound lanes, and then collide with a curb and a wall. The passenger crawled out of the Kia and walked towards the Dodge. He noticed two people in the Dodge, and they ran away as he approached their vehicle. The passenger called out, "Now you guys, you're running away from us leaving us for dead?" Both the passenger and the driver sustained severe physical injuries from the collision.

¶3        The responding police officers searched the abandoned Dodge, finding several cold beers, open containers, and warm food in paper bags. They also found a driver's license with the name Jason Hyde and an address. At 2:46 a.m., two officers went to the address on the driver's license. They knocked on the door and Hyde's mother answered. They asked if they could go in, but she said nothing.

¶4        Hyde then came to the door with "his hand out in front of him with his fists clenched." Upon seeing this, one of the officers put him in a hold usually performed when handcuffing someone. The officers did not place Hyde in handcuffs but told him that he was being detained. They did not read him his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Hyde then questioned why he was being detained and argued with one of the officers. The other officer de-escalated the situation, and Hyde agreed to talk to him. They walked to the front of the porch and started talking, but

Hyde stated he wanted to return to the front door because he wanted the conversation recorded by a camera in the door. The officer did not stop him from walking in the camera's view.

¶5　　　　The officers asked Hyde if he knew why they had contacted him. He responded that he had been involved in a collision and that he was the driver. He added that the Kia had hit his vehicle, that the passenger had yelled profanities at him, and that he got scared and "ran." The officers then asked him why he had not called the police after the collision, to which he responded that he did not have a phone. Finally, they asked him where the case of beer in the vehicle's front seat had come from, and Hyde said he had "no clue." The officers did not ask him whether he had been drinking before driving, but he "volunteer[ed]" that he did not drink before the collision and drank only after he came back home. Less than five minutes after the encounter began, he chose to cease talking. The officers then arrested him. After the arrest, the officers asked Hyde his date of birth and whether he had anything on him that might harm them. He confirmed his date of birth and said he was not carrying any weapons but continued "spontaneously" making incriminating statements such as "There was no one in the car with me" and "I really wish I would have stayed [at the scene]." The officers' body cameras had recorded Hyde's encounter with the officers and his arrest.

¶6　　　　The State charged Hyde with one count of failure to stop at the scene of an accident involving serious physical injury or death, a class 2 felony; three counts of aggravated assault, class 3 and 4 felonies; and two counts of criminal damage, one a class 4 felony, and the other a class one misdemeanor. The State later moved to dismiss the aggravated assault and criminal damage charges. For the charge of failure to stop at the scene of an accident involving serious physical injury or death, the State alleged physical, emotional, or financial harm to the victim or the victim's immediate family as an aggravating factor. The State also alleged the taking of or damage to property as an aggravating factor for the misdemeanor criminal damage charge.

¶7　　　　Before trial, Hyde moved to preclude all the statements that he made before he spoke to his attorney, arguing that the statements were obtained in violation of his *Miranda* rights because he was in custody but was not given warnings. The State responded that his statements before his arrest should not be suppressed because he was not in custody when he was questioned and that his post-arrest statements should not be suppressed because they were not made in response to questioning. The court held an evidentiary hearing, observing the body camera recording

3

and hearing testimony from the arresting officer about the encounter. The court denied Hyde's motion, finding that Hyde was not in custody because the environment in which he was questioned did not present inherently coercive pressures. It also found that he was not interrogated after he was arrested and that he "blurt[ed] out" his post-arrest statements "despite not being asked a question."

**¶8** At trial, the State referred to the passenger as one of the victims during its opening statement. After the opening statement, Hyde moved to preclude the State from referring to the passenger as a victim. The State argued that the passenger was a victim because "two victims out of the same or one nucleus of events" could exist and that Hyde's conduct victimized the passenger and the driver. The trial court denied the motion, reasoning that failure to stop at the scene of an accident involving serious physical injury or death required a victim and that the State could refer to the passenger as a victim. However, before the State's closing argument, the trial court instructed the jury that counsel's comments were "not evidence." During closing arguments, the State again referred to the passenger as a victim.

**¶9** The jury found Hyde guilty of criminal damage and failure to stop at the scene of an accident involving serious physical injury or death. The jury also found that the State had proved the alleged aggravating factor for each count. The court sentenced Hyde to a term of 7 years' imprisonment for the count of failure to stop at the scene of an accident involving serious physical injury or death, and to a consecutive term of 2 years' imprisonment for the count of criminal damage. Hyde timely appealed.

**DISCUSSION**

**I. Motion to Suppress**

**¶10** Hyde argues that the trial court erred in denying his motion to suppress his statements. This court reviews the trial court's denial of a motion to suppress for abuse of discretion. *State v. Maciel*, 240 Ariz. 46, 49 ¶ 9 (2016). In this review, this court considers "only the evidence presented at the suppression hearing, and reviews the evidence in a light most favorable to upholding the ruling." *State v. Aldana*, 252 Ariz. 69, 72 ¶ 10 (App. 2021).

**¶11** *Miranda* requires the police to warn suspects who are in custody of their rights before initiating questioning. *State v. Spears*, 184 Ariz. 277, 286 (1996). A person is considered in custody for *Miranda* purposes if

the person's "freedom of action was significantly curtailed and, if so, when the environment in which [the person] was questioned presented inherently coercive pressures similar to a station house interrogation." *Maciel*, 240 Ariz. at 50 ¶ 13.

**¶12** A person's freedom of movement "has been significantly curtailed if a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Id*. at 50 ¶ 14 (internal quotation marks and citation omitted). Here, Hyde argues—and the State concedes—that his freedom of action was curtailed. As a result, the only remaining issue is whether the environment presented "inherently coercive pressures."

**¶13** A person is questioned in an environment that presents "inherently coercive pressures" if the environment "threaten[s] to subjugate the [person] to the examiner's will." *Id*. at 50 ¶ 16 (citation omitted). To determine whether the environment presented "inherently coercive pressures," we must consider "all of the circumstances surrounding the interrogation," including the site of the questioning, the presence of objective indicia of arrest, and the length and form of the interrogation. *Id*. at 49–50 ¶¶ 11, 14 (internal quotation marks and citation omitted). When "a person is arrested in his home or on the street and whisked to a police station for questioning[,] detention represents a sharp and ominous change, and the shock may give rise to coercive pressures." *Id*. at 50 ¶ 17 (citation omitted). "In contrast, coercion is often lacking when a person is questioned in familiar surroundings." *Id*. (citation omitted).

**¶14** Here, before he was arrested, Hyde was questioned in familiar surroundings. He was questioned in front of his mother's house's porch. *Id*. His mother and daughter were present during the questioning, the entire encounter occurred in public, and he was in full view of passersby. *Id*. at 50–51 ¶ 18 (explaining that "exposure to public view during questioning can dispel the danger of coercion"). He was not transported elsewhere nor was he handcuffed. He was able to move back and forth in front of the house. Only two officers were present during questioning and they did not threaten him with force. Finally, Hyde's encounter with the officers before he was arrested lasted less than five minutes. *Id*. at 51 ¶ 23 (finding that detention of less than one hour did not, on its own, amount to custody for *Miranda* purposes). The evidence presented at the suppression hearing supports the trial court's finding that Hyde was not questioned in an environment that presented inherently coercive pressures and he was thus not in custody.

**¶15**         The record also supports the trial court's finding that Hyde's statements after he was arrested were not the result of interrogation. The officers asked him only (1) whether he had anything on him that might harm them and (2) to confirm his date of birth. Those questions concerned officers' safety and Hyde's identity. They were attendant to his arrest and not reasonably likely to elicit an incriminating response from Hyde. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (holding that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police[—]*other than those normally attendant to arrest and custody*[—]that the police should know are reasonably likely to elicit an incriminating response from the suspect" (emphasis added)); *see also State v. Landrum*, 112 Ariz. 555, 559 (1976) (holding that questions about the suspect's identify were "clearly neutral, nonaccusatory in nature, and in furtherance of proper preliminary investigation" (internal quotation marks and citation omitted)). The rest of Hyde's statements after his arrest were spontaneous. He was not made any promises nor did the officers threaten him with force. Hyde has shown no error.

## II.     Victim Reference

**¶16**         Hyde also argues that the trial court erred in allowing the State, over his objection, to refer to the passenger as a victim in its opening statement and closing argument. He contends that because the passenger was not listed as a victim in the indictment, the passenger's status as a victim was not relevant under Arizona Rule of Evidence 401.

**¶17**         Hyde frames the issue as an error in admitting irrelevant evidence. But the State referred to the passenger as a victim only during its opening statement and closing argument. Statements of counsel are not evidence. *See Boyde v. California*, 494 U.S. 370, 384 (1990). We thus reject this framing. The issue is not whether irrelevant evidence was erroneously admitted, but whether the court erred in allowing the State to refer to the passenger as a victim. In reviewing prosecutorial error claims, this court first determines whether an error exists. *State v. Shortman*, 254 Ariz. 338, 343 ¶ 21 (App. 2022). If so, "[w]e will find an error harmless if we can say beyond a reasonable doubt that it did not affect the verdict." *State v. Payne*, 233 Ariz. 484, 511 ¶ 106 (2013).

**¶18**         A "victim" is "a person against whom a criminal offense has been committed." A.R.S. § 13–4401(19). One may be considered a "victim" even if not identified as such in the indictment or charging document. *See State v. Guilliams*, 208 Ariz. 48, 52–53 ¶¶ 13–15 (App. 2004) (holding that

Department of Corrections was a "victim" of defendant's attempted escape for purposes of restitution award because "the restitution statutes do not require that a specific victim be named in . . . [an] indictment . . . or verdict form"). Further, the offense of failure to stop at the scene of an accident involving serious physical injury or death may have more than one victim. *See State v. Powers*, 200 Ariz. 123, 127 ¶ 13 (App. 2001) (stating that the objective behind the law prohibiting drivers from leaving the scene of a collision "is satisfied by allowing only a single charge for each accident scene regardless of the number of victims").

¶19        Here, Hyde was driving the Dodge that hit the Kia in which the driver and the passenger were traveling, and severely injured them. Thus, both the driver and the passenger were victims of Hyde's offense. *See State ex rel. Smith v. Reeves*, 226 Ariz. 419, 422–23 ¶¶ 13–17 (App. 2011) (explaining that "[a]lthough defendant was not charged with committing a crime for hitting [a child], the charge that he left the scene without complying with A.R.S. § 28–663 is not simply a claim that defendant violated a safety statute or an offense against public order; rather, it is a claim that he violated the specific duty he owed to [the child] that arose the moment that defendant struck him"). As a result, the trial court did not err in allowing the State to refer to the passenger as one of the victims.

¶20        Moreover, the trial court instructed the jury that counsel's statements during their opening statements and closing arguments were "not evidence," and "[w]e presume that the jurors follow[] the court's instructions." *State v. Newell*, 212 Ariz. 389, 403 ¶ 68 (2006). Thus, even if the trial court erred in allowing the State to refer to the passenger as a victim in closing argument, the reference did not affect the jury's unanimous verdict. *See State v. Acuna Valenzuela*, 245 Ariz. 197, 216 ¶ 69 (2018) (finding that even if the State's statements during its opening statement were improper, "they were harmless in light of the trial court's initial instructions noting that opening statements are not evidence").

## CONCLUSION

¶21        We affirm.

