NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KEVIN WILLIAM DAMMANN, *Appellant.*

No. 1 CA-CR 24-0472

FILED 10-01-2025

Appeal from the Superior Court in Maricopa County
No. CR2023-155747-001
The Honorable Mark H. Brain, Judge

**AFFIRMED**

COUNSEL

Vingelli & Company, Law Offices, PLLC, Scottsdale
By John N. Vingelli
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Joseph A. Newberg, II
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Daniel J. Kiley joined.

---

**F U R U Y A**, Judge:

¶1        Kevin William Dammann appeals his convictions for one count of aggravated assault and one count of disorderly conduct, arguing the superior court erred in denying his motion to suppress. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Dammann was identified as a suspect in an assault case against his ex-girlfriend. Phoenix Police Officer Wells was tasked with locating and taking Dammann into custody, which he did in early December 2023. During arrest, but before being *Mirandized*,[1] Dammann made statements about the assault to Officer Wells. Later at the police station, Officer Wells read Dammann his *Miranda* rights and Dammann agreed to speak with Officer Wells about the assault.

¶3        Dammann was charged with three counts of aggravated assault (Counts 1, 2, and 3) and one count (Count 4) of disorderly conduct, all as domestic violence offenses. Dammann moved to suppress his pre- and post-*Miranda* statements. After the suppression hearing, the court granted Dammann's motion regarding his pre-*Miranda* statements made while he was being arrested but denied the motion as to his post-*Miranda* statements made during the later interview at the station.

¶4        A jury found Dammann guilty on all counts, but the court dismissed Counts 2 and 3 as duplicative. Dammann was sentenced to three years of supervised probation for Counts 1 and 4.

---

[1]        Referring to a police officer's notification to a suspect of their "Miranda Rights." *See Miranda v. Arizona*, 384 U.S. 460, 479 (1966) (Supreme Court mandating that police apprise an individual in custody, prior to questioning, of the following: (1) their right to remain silent, (2) that anything they say can be used against them in court, and (3) that they have a right to an attorney or to have one appointed if they cannot afford one).

¶5        Dammann timely appealed and we have jurisdiction under Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

¶6        Damman contends his post-*Miranda* statements[2] to Officer Wells were the product of an unconstitutional two-stage interrogation and should have been suppressed. We review a trial court's ruling on a motion to suppress for abuse of discretion and consider only the evidence presented at the suppression hearing. *State v. Rushing*, 243 Ariz. 212, 225 ¶ 56 (2017) (citation omitted). Such evidence is viewed in a light most favorable to upholding the ruling. *Id.*

¶7        *Miranda* warnings protect a suspect's right against self-incrimination by requiring law enforcement to inform in-custody suspects of their rights before interrogation. *Miranda v. Arizona*, 384 U.S. 436, 467–69 (1966). To ensure these warnings are timely given, pre-*Miranda* responses to police interrogations made by in-custody suspects are generally inadmissible. *State v. Aldana*, 252 Ariz. 69, 72 ¶ 11 (App. 2021) (citation omitted). Post-*Miranda* responses are generally admissible but may be suppressed if obtained through an impermissible two-stage interrogation. *Id.*

¶8        A two-stage interrogation occurs when police delay giving *Miranda* warnings and engage the suspect in questioning, only to later give the *Miranda* warnings and conduct further questioning. *State v. Zamora*, 220 Ariz. 63, 66 ¶ 1 n.2 (App. 2009) (citation omitted). Such interrogations are improper when employed strategically as part of a tactic to thwart *Miranda*. As we have explained, impermissible two-stage interrogations occur when,

> [i]n the first stage, police interrogate a person in custody without having given the person his Miranda warnings and the person has made statements in response to that questioning. Then, in the second stage, the police give the person his Miranda warnings, the person waives his right to remain silent and the person repeats his prior statements in response to the police repeating the questions or lines of questions asked prior to the Miranda warnings being given.

---

2        The court's suppression of Dammann's pre-*Miranda* statements to police is not named as an issue for this appeal and we do not address it.

*Id.* However, the occurrence of a two-stage interrogation does not, by itself, conclusively require suppression of post-*Miranda* responses.

**¶9**　　　　To determine whether post-*Miranda* responses are admissible when police have delayed giving the *Miranda* warnings, the court must first decide whether the two-stage interrogation was deliberately used to circumvent *Miranda*. *Missouri v. Seibert*, 542 U.S. 600, 621–22 (Kennedy, J., concurring); *see also U.S. v. Williams*, 435 F.3d 1148, 1157 (9th Cir. 2006) (synthesizing a formal two-stage interrogation analysis from the *Seibert* plurality opinion and Justice Kennedy's concurrence). The court should consider both objective and subjective evidence in this inquiry. *Williams*, 435 F.3d at 1158.

**¶10**　　　　If the court finds that the police did not use the two-stage interrogation to circumvent *Miranda*, the court must then determine whether the suspect's waiver of *Miranda* rights was voluntary. *Oregon v. Elstad*, 470 U.S. 298, 318 (1985) ("The relevant inquiry is whether, in fact, the second statement was also voluntarily made."); *Williams*, 435 F.3d at 1158 ("In situations where the two-step strategy was not deliberately employed, *Elstad* continues to govern the admissibility of postwarning statements."). Only if the court finds the two-stage interrogation was deliberately implemented to circumvent *Miranda* must it then proceed to analyze whether the delayed warnings effectively informed the suspect of his rights using a multifactor test. *Seibert*, 542 U.S. at 611–12, 615 (Souter, J., plurality opinion) (identifying five factors the court should consider in its analysis); *Williams*, 435 F.3d at 1160 (adding a sixth factor from Justice Kennedy's *Seibert* concurrence).

**¶11**　　　　Here, Dammann asserts the court erred because it made no findings as to whether the two-stage interrogation was deliberate. He further argues the delayed warnings were both deliberate and ineffective. But the absence of express findings does not establish error. *See Mong Ming Club v. Tang*, 77 Ariz. 63, 67 (1954) ("On appeal, we as a reviewing court, must assume that the trial court found, in addition to express findings of fact appearing in the record, such additional facts as are necessary to sustain the judgment, if they are reasonably supported by the evidence, and not in conflict with the express findings."). We further presume trial judges know and apply the law. *State v. Lee*, 189 Ariz. 608, 616 (1997) (citations omitted).

**¶12**　　　　In this case, the court ordered Dammann's pre-*Miranda* statements suppressed but admitted his post-*Miranda* statements made during his later interview. Though the court did not provide explicit findings in its ruling on the motion to suppress, we will nevertheless

uphold its order if reasonably supported by the evidence and not in conflict with its express findings. *Mong Ming Club*, 77 Ariz. at 67. The record contains reasonable evidence to support an implicit finding that the two-stage interrogation was non-deliberate and that Dammann's post-*Miranda* statements were voluntary.

¶13　　First, Officer Wells was unprepared to interrogate Dammann upon arrest because Officer Wells had limited knowledge of the assault case. At the suppression hearing, Officer Wells testified that when he interviews a suspect, he wants to be "well versed on the case and what was going on prior to talking to [the suspect] about that." However, upon arresting Dammann, Officer Wells expressed he did not know the case details when he told Dammann, "We're just the pick 'em up guys. I'm not the detective working the case." Officer Wells also testified that because his role was simply to apprehend suspects for questioning by detectives, he is generally provided with limited information about the case. And unlike in *Seibert*, where the arresting officer was specifically instructed to "refrain from giving *Miranda* warnings," *Seibert*, 542 U.S. at 604, no evidence in this record suggests that Officer Wells received similar instructions from the investigating detectives. Thus, it does not appear from the evidence that Officer Wells had sufficient information during Dammann's arrest to conduct an interrogation or strategize to later catch Dammann unawares by means of a deliberate two-stage process.

¶14　　Second, Officer Wells' actions and testimony show that not only was he unwilling to interrogate Dammann upon arrest, but he was also unaware that he would conduct a later interview. During his arrest, Dammann asked multiple times why he was being arrested. Rather than engage, Officer Wells deflected by saying, "Hang tight man" and "We'll talk to you about that in a minute." Moreover, Officer Wells testified he was not expecting to interview Dammann but did so at the station because the case detective was unavailable, and it was requested of him. On this evidence, we conclude that the record supports an implied finding that the two-stage interrogation used was not deliberately employed to thwart Dammann's *Miranda* rights.

¶15　　Further, evidence also supports an implicit finding that Dammann's post-*Miranda* waiver was voluntary. *See Elstad*, 470 U.S. at 318. After Dammann arrived at the station, Officer Wells confirmed his identity and read him the *Miranda* warnings. After reading the warnings, Officer Wells asked Dammann if he understood them and if he would speak with Officer Wells voluntarily. Dammann agreed, saying "yes" twice. Nothing in the record indicates any concerns regarding threats, intimidation,

incapacity, or any other circumstance that would contradict the voluntary nature of Dammann's waiver. Moreover, "Fifth Amendment protections . . . are not self-executing" and must be affirmatively asserted. *State v. Melendez*, 259 Ariz. 282, 289 ¶ 19 (2025). And "answering questions after police properly give the *Miranda* warnings constitutes a waiver of these rights by conduct." *Id.* at ¶ 20 (citation modified) (quoting *State v. Trostle*, 191 Ariz. 4, 14 (1997)). Damman did not unequivocally and unambiguously invoke his right to remain silent. As noted, he expressly agreed to speak with police and did so. Thus, we conclude that the record supports an implied finding that Dammann's waiver was voluntary as to his post-*Miranda* statements.

**¶16** Because reasonable evidence supports findings that the two-stage interrogation in this case was not deliberate and Dammann's waiver of rights as to his post-*Miranda* statements was voluntary, we discern no error.

## CONCLUSION

**¶17** We affirm the trial court's ruling on the motion to suppress and affirm Dammann's convictions.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:            JR

6